# UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

E.SPIRE COMMUNICATIONS,
INCORPORATED,
          *Petitioner-Appellee,*

          v.                                          No. 02-1089

CNS COMMUNICATIONS, a/k/a CNS
Communications, Limited,
          *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-01-46-MC)

Argued: June 6, 2002

Decided: July 15, 2002

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Lauren Anne Greenberg, THALER LIEBELER, L.L.P.,
Washington, D.C., for Appellant. Anessa Abrams, SCHMELTZER,
APTAKER & SHEPARD, P.C., Washington, D.C., for Appellee. **ON
BRIEF:** Paul S. Thaler, Lars H. Liebeler, THALER LIEBELER,
L.L.P., Washington, D.C., for Appellant. Eric L. Yaffe,
SCHMELTZER, APTAKER & SHEPARD, P.C., Washington, D.C.,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

CNS Communications, Ltd. appeals the district court's order confirming an arbitration award entered in favor of e.spire Communications, Inc. For the reasons set forth below, we affirm.

### I.

CNS is a telecommunications company that provides its customers with prepaid calling cards. In 1999, CNS and e.spire entered into a series of agreements, whereby e.spire contracted to provide long distance and toll-free telecommunications services for resale by CNS. Pursuant to preliminary contracts, e.spire began to provide services to CNS, and on June 8, 2000, the parties met in Virginia to finalize their respective obligations. At that meeting, CNS's representative signed a Master Services Agreement (MSA), which contained an arbitration clause.[1] Invoices for services rendered by e.spire to CNS under the parties' agreements totaled $9,400,456.28. CNS paid e.spire a total of $2,678,941.00, leaving a balance due of $6,721,515.28.

On October 27, 2000, e.spire filed a Demand for Arbitration with the American Arbitration Association (AAA). CNS filed a petition to stay arbitration in the Supreme Court of the State of New York and requested the court to vacate the demand for arbitration, asserting that no valid arbitration agreement existed, and e.spire removed the action to the United States District Court for the Southern District of New York. On January 26, 2001, the parties entered into a settlement

---

[1] As is discussed below, *infra* at 5-6, CNS claims that the MSA is not a valid, enforceable contract but instead is a proposed contract and that CNS's representative signed the MSA "as a sign of good faith even though the parties had not agreed upon material terms." (Appellant's Br. at 6.)

agreement whereby they agreed to arbitrate the dispute before the AAA.

On February 9, 2001, CNS submitted a letter to the AAA, which it characterizes as a motion, arguing that New York was an improper locale for the arbitration hearing and that the hearing should take place in either Georgia or Virginia. Based upon the parties' submissions regarding locale, the arbitral panel ordered that the arbitration take place in Arlington, Virginia.[2] On April 19, 2001, the arbitral panel conducted a preliminary hearing and set the case for arbitration on July 9-11, 2001. The next day, the AAA entered a Scheduling Order establishing that the parties were required to disclose all proposed witnesses and exhibits by June 25, 2001. CNS never disclosed any proposed witnesses or exhibits. As a result, the arbitral panel precluded CNS from offering any witnesses to testify on its behalf at the arbitration hearing and from introducing exhibits during the hearing.

On June 19, 2001, approximately three weeks before the arbitration hearing was scheduled to take place, CNS sent a letter, which it characterizes as a motion, to the arbitral panel's case manager, Amy Henthorn Jones, in which CNS argued that the arbitral panel lacked jurisdiction to consider the dispute because there was no valid agreement to arbitrate. CNS alleges that Jones informed it that the motion would be resolved prior to the hearing before the panel. On July 3, 2001, the parties were notified by a somewhat enigmatic letter signed by Jones that the panel would not consider CNS's motion because "the Association does not determine issues of substances [sic] and due to the fact that the Respondent [CNS] does not wish for this matter to go before the Panel." (J.A. at 149.)

The arbitration hearing took place as scheduled on July 9, but CNS did not attend. Despite CNS's failure to attend the hearing, e.spire was required to introduce evidence, including testimony and exhibits, in support of its breach of contract claim. After the hearing, CNS was given the opportunity to submit a "post-hearing brief . . . in the nature of closing argument" on its behalf, but CNS failed to submit any materials to the panel. (J.A. at 267 (internal quotation marks omitted).) The panel issued an award in favor of e.spire for $6,721,515.28,

---

[2]The locale was later changed to Washington, D.C.

plus interest at the rate of 8% per annum, attorney's fees, and other related costs.

Thereafter, e.spire moved to confirm the arbitration award in the United States District Court for the Eastern District of Virginia. CNS opposed this motion, claiming that the award should be vacated. Finding no reason to vacate the arbitration award, the district court granted e.spire's motion. CNS moved for reconsideration pursuant to Federal Rule of Civil Procedure 60(b), and the district court denied this motion. CNS filed a timely notice of appeal. On appeal, CNS claims that the district court erred by refusing to vacate the arbitration award on the basis that the arbitral panel exceeded its powers, by refusing to vacate the arbitration award in light of misconduct by the arbitral panel, and by concluding that the arbitral panel's award was not a de facto default judgment. We review the district court's decision confirming the arbitration award de novo and its factual findings for clear error. *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993).

II.

Section 9 of the Federal Arbitration Act (the FAA) provides that any time within one year after an arbitration award is made, a party to the arbitration may apply to a federal district court for an order confirming the award. 9 U.S.C.A. § 9 (West 1999); *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 191-92 (4th Cir. 1998) (holding that, where parties have not specified in their agreement the court to which they must apply for confirmation of the award, venue is proper in any federal district court). The federal court's review of an arbitration award is tightly circumscribed. *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam) (stating that the scope of review of arbitration award is "among the narrowest known to the law" (internal quotation marks omitted)); *Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991) (noting that arbitration awards are "accorded great deference"). The court must confirm the arbitration award unless the award is vacated, modified, or corrected pursuant to section 10 or 11 of the FAA. 9 U.S.C.A. § 9 ("[A]t any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an

order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."). Under the FAA, an award may be vacated only under five circumstances:

(1)    Where the award was procured by corruption, fraud, or undue means.

(2)    Where there was evident partiality or corruption in the arbitrators, or either of them.

(3)    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4)    Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5)    Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C.A. § 10(a)(1)-(5) (West 1999).

## A.

CNS first contends that the arbitration award should be vacated pursuant to § 10(4) because the arbitral panel exceeded its powers by entering an award in favor of e.spire when the dispute was not arbitrable. In a related vein, CNS argues that the district court erred by ruling on the issue of arbitrability in the first instance when the parties had agreed to submit the issue of arbitrability to the arbitral panel.

In support of its claim that the dispute was not arbitrable, CNS focuses on the MSA that was signed by both parties in June 2000.

That contract contained an arbitration clause, but CNS contends that the MSA was not binding because it was not intended to serve as a final contract. Regardless of the binding nature of the MSA, on January 26, 2001, the parties entered into a settlement agreement that provides as follows:

> 1.   *CNS agrees to arbitrate with e.spire under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") all disputes that are the subject of e.spire's October 27, 2000 Demand for Arbitration, including e.spire's claims for payment for services provided to CNS at any time prior to October 27, 2000 and including any counterclaims CNS may seek to assert against e.spire.*
>
> 2.   Subject to CNS's above agreement in paragraph 1, e.spire agrees to reopen the issue of the locale for the arbitration hearings . . . .
>
> 3.   Subject to CNS's above agreement in paragraph 1, e.spire agrees to reopen the issue of the party-arbitrator to be appointed for CNS . . . .[3]

(J.A. at 122 (emphasis added).) The agreement was signed by CNS, and CNS does not dispute that it is a valid, binding settlement agreement. Rather, CNS claims that by referencing "all disputes," the settlement agreement does not resolve the issue of arbitrability but instead leaves that issue for the arbitral panel. This argument is, at best, disingenuous, in that it ignores the plain terms of the settlement agreement. Indeed, it is difficult to imagine a more explicit agreement to arbitrate the substantive dispute than the following language: "CNS agrees to arbitrate . . . e.spire's claims for payment for services provided to CNS."[4] Thus, CNS's argument that the arbitral panel

---

[3]The parties also agreed that the Southern District of New York "retain[ed] jurisdiction over this matter to enforce the terms of this agreement." (J.A. at 123.) Neither party, however, sought enforcement of the agreement in the Southern District of New York.

[4]CNS claims that giving the settlement agreement this construction is illogical because CNS would have gained nothing from such an agreement. We disagree. The agreement plainly allowed CNS the opportunity to have the issues of locale and the appointment of the arbitrator reopened.

exceeded its authority because the substantive dispute was not arbitrable is baseless.

Further, the district court did not improperly rule on the issue of arbitrability in the first instance. As CNS conceded at oral argument, the arbitral panel found that the dispute was arbitrable and that it possessed authority to resolve the dispute. (J.A. at 29-30 ("Pursuant to a settlement agreement entered into between e.spire and CNS . . . CNS agreed to arbitrate with e.spire . . . e.spire's claims for payment for services provided to CNS . . . ." (internal quotation marks omitted))); (J.A. at 37 ("e.spire and CNS were parties to three executed and enforceable master service agreements dated August 1999, January 2000, and June 2000.").) The district court discussed the arbitrability of the dispute only in reference to the question presented by CNS — whether the arbitral panel exceeded its authority. In light of the unambiguous terms of the settlement agreement and the arbitral panel's conclusion regarding arbitrability, the district court's finding that the panel did not exceed its authority undoubtedly was correct. Thus, § 10(4) does not provide a basis for vacating the arbitration award.

### B.

CNS also argues that the arbitral panel engaged in misconduct within the meaning of § 10(3) by refusing to hear evidence "pertinent and material to the controversy" when it limited CNS's participation in the arbitration hearing by prohibiting it from introducing exhibits or calling witnesses at the hearing after CNS failed to disclose any proposed witnesses or exhibits.[5] 9 U.S.C.A. § 10(3). At the outset, we

---

[5]CNS contends that the limitation amounted to a "sanction," but we reject this characterization, as it is unsupported by the record. Thus, we need not decide whether, and to what extent, the arbitral panel has the authority to impose sanctions on parties before it. Suffice it to say, however, that the panel possesses some power to control the presentation of evidence at the hearing. For example, AAA Commercial Arbitration Rule 23 provides that arbitrators may set a schedule for the exchange of exhibits and identification of witnesses. AAA Commercial Arbitration R. 23(a). Rule 23 further provides that "[t]he arbitrator is authorized to resolve any disputes concerning the exchange of information." R. 23(c). Similarly, Rule 32(a) states that each party generally is given the right

note that CNS has not identified, either to the arbitral panel or this court, any evidence that it would have presented at the hearing but for the panel's limitation on its right to present evidence. Consequently, it is impossible to determine whether any evidence that was excluded was "pertinent and material" to the controversy.

Moreover, even assuming the exclusion of pertinent and material evidence, not every failure of an arbitrator to receive relevant evidence constitutes misconduct requiring the vacatur of an arbitrator's award. Instead, a federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence deprives a person of a "fundamentally fair hearing." *UMWA v. Marrowbone Dev. Co.*, 232 F.3d 383, 385, 388 (4th Cir. 2000); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) (providing that exclusion of relevant evidence only constitutes misconduct when the exclusion unduly prejudices the rights of a party to the arbitration proceedings); AAA Commercial Arbitration R. 32 (providing that each party must be "given a fair opportunity to present its case"). The limitation on CNS's right to present evidence at the hearing did not deprive CNS of a fundamentally fair hearing. To the contrary, the limitation was necessary to prevent undue prejudice to e.spire that would have resulted from CNS's failure to disclose its proposed evidence. CNS was on clear notice from the Scheduling Order of the deadlines and that the deadlines in the Order would be "strictly enforced." (J.A. at 249.) Additionally, although the arbitral panel limited CNS's participation in the hearing, it afforded CNS many oppor-

---

to present evidence in support of its position, but that "[t]he arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case," R. 32(a), and that "[t]he arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues . . . ." R. 32(b). Rule 33 states that "[t]he arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered . . . ." R. 33(b). Finally, the Rules permit an arbitration to "proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement." R. 31.

tunities to present its case. The panel allowed CNS the opportunity to attend the hearing, to make opening and closing statements, and to cross examine e.spire's witnesses. CNS did none of these things. After the hearing, the arbitral panel again informed CNS of its right to file a document in the form of a closing brief; CNS also did not take advantage of this opportunity.

Notably, CNS does not contend that it lacked notice of the deadlines set forth in the Scheduling Order or that it was unaware that non-compliance would affect its right to present evidence at the hearing. It claims only that its non-compliance with the Scheduling Order was the result of its belief that it did not need to comply with the Scheduling Order because it was told by Jones that the arbitration hearing would not take place until CNS's jurisdictional motion was resolved. Regardless of the merits of CNS's jurisdictional argument, this was an unreasonable strategy. CNS has not pointed to any document or communication from the arbitral panel suggesting that CNS was informed that it could disregard the Scheduling Order while it awaited the arbitral panel's ruling on the motion. All of the documents from the arbitral panel were unambiguous as to the relevant deadlines and the date of the arbitration hearing. Moreover, CNS did not seek a continuance of the hearing on the ground that a jurisdictional motion was pending, as it was entitled to do pursuant to Rule 30. *See* AAA Commercial Arbitration R. 30 ("The arbitrator may postpone any hearing upon . . . request of a party for good cause shown."). Nor did CNS attend the hearing to present the jurisdictional motion to the panel. Similarly, it did not submit a brief, either prior to or after the hearing, arguing that the arbitral panel lacked jurisdiction, and it did not inform the panel of Jones's alleged assurances as a basis for reconsidering the panel's limitation on CNS's right to present evidence at the hearing. Thus, we are unpersuaded by CNS's claim that it was justified in ignoring almost every aspect of the arbitration process. Accordingly, we agree with the district court that the arbitral panel did not engage in misconduct within the meaning of § 10(3) by limiting CNS's presentation of evidence at the arbitration hearing as a result of CNS's failure to identify any witnesses or exhibits. *Cf. Trans Chem. Ltd. v. China Nat'l Machinery Import & Export*, 161 F.3d 314, 319 (5th Cir. 1998), *aff'g* 978 F. Supp. 266, 307 (S.D. Tex. 1997) (concluding that arbitral panel did not engage in misconduct by enforcing its scheduling order).

## C.

CNS next argues that the arbitral panel's failure to rule on its jurisdictional motion amounted to misconduct within the meaning of § 10(3). As we note above, *supra* at 5-7, although the arbitral panel did not rule on CNS's motion, it did find that it possessed jurisdiction, a finding that was amply supported by the record. Additionally, to the extent Jones's failure to forward the motion to the arbitral panel was erroneous,[6] CNS had countless opportunities to submit the motion directly to the arbitral panel, yet it did not take advantage of any of these opportunities. We find no support in the text of section 10(3), or the caselaw interpreting that section, for vacatur of an arbitration award on the basis of a procedural flaw that could have been, and likely would have been, rectified by the arbitral panel had the aggrieved party brought the error to the panel's attention. Accordingly, we conclude that the district court correctly found that the alleged procedural error is an insufficient basis to justify vacatur of the arbitration award under § 10(3).

## III.

Finally, CNS contends that the district court erred by denying its motion for reconsideration. In its motion for reconsideration, CNS argued that the arbitration award in favor of e.spire amounted to a default judgment and that CNS should be relieved from the judgment pursuant to Federal Rule of Civil Procedure 60(b)(1), which provides that a court may vacate a final judgment based upon "excusable neglect." This argument lacks legal, as well as factual, support.

The Federal Rules of Civil Procedure apply in proceedings to confirm an arbitration award "only to the extent that matters of procedure are not provided for in [Title 9]." Fed. R. Civ. P. 81(a)(3); *Deiulemar Compagnia Di Navigazione v. M/V Allegra*, 198 F.3d 473, 481 (4th Cir. 1999). "Under Rule 81(a)(3), the Federal Rules fill in only those procedural gaps left open by the FAA." *Id.* at 482 (internal quotation

---

[6]Arguably, the panel was under no obligation to consider the motion because it was untimely. The Scheduling Order set a deadline of May 18, 2001 for the parties to raise any preliminary matters in connection with the arbitration, and the motion was filed over one month after this deadline.

marks omitted). The FAA provides for vacatur of an arbitration award in five circumstances, and those circumstances are exclusive. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 n.4 (4th Cir. 1993) (stating that the five grounds for vacatur listed in § 10 are the "only" circumstances that justify vacatur). Because the FAA contains exclusive procedures for vacating arbitration awards, Rule 60(b)(1) is inapplicable.[7] Thus, we conclude that the district court did not err by denying CNS's motion for reconsideration.

## IV.

Finding no error in the district court's confirmation of the arbitration award entered in favor of e.spire, we affirm.

*AFFIRMED*

---

[7]Even assuming Rule 60(b)(1) could provide an alternative mechanism for vacating an arbitration award, CNS has not demonstrated that a default judgment was entered because, despite CNS's failure to appear at the hearing, the award was entered based upon the panel's consideration of the merits of the dispute after requiring e.spire to submit evidence in support of its claim; it was not based upon a technical default by CNS. *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 578 n.4 (8th Cir. 1998) ("We note that this case was not decided by default. Val-U presented evidence to the arbitrator at the hearing [although Tribe did not], and the arbitrator issued an award based on the evidence submitted."). Moreover, CNS concedes that counsel's conduct was not the result of neglect but instead was the result of deliberate, strategic decisions. *Cf. Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996) (defining "neglect" as "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control" (citation omitted)); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (holding that no relief is available under Rule 60(b)(6) for a deliberate decision). Because CNS was apprised of its counsel's decisions, was aware of the date of the hearing, and was aware of the deadlines in the Scheduling Order, it is neither inequitable nor improper to hold CNS accountable for its counsel's choices. *Augusta Fiberglass Coating, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) (distinguishing between fault of attorney and fault of client in determining whether to set aside default judgment pursuant to Rule 60(b)(1)).