10-4867-cv(L)
*ISC Holding AG v. Nobel Biocare Finance AG*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2011

(Argued: September 27, 2011         Decided: July 25, 2012)

Nos. 10-4867-cv(L), 11-239-cv(CON)

───────────────────────────────

ISC HOLDING AG,
*Petitioner-Appellant,*


-v.-

NOBEL BIOCARE FINANCE AG[*],
*Respondent-Appellee.*

───────────────────────────────

Before:      WALKER, STRAUB, and LIVINGSTON, *Circuit Judges.*

Petitioner-Appellant ISC Holding AG, contending that the district court erred in denying its motion for recusal, appeals from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*), dismissing with prejudice its petition to compel arbitration, and from an order vacating its Fed. R. Civ. P. 41(a)(1)(A)(i) notice of voluntary dismissal. Finding no abuse of discretion in the denial of the motion to recuse or the vacatur of the notice of voluntary dismissal, we AFFIRM.

Judge Straub files a separate opinion concurring in part and dissenting in part.


> LOUIS B. KIMMELMAN (Pamela Rogers Chepiga, *on the brief*), Allen & Overy LLP, New York, NY, *for Petitioner-Appellant.*

───────────────────

[*] The Clerk of Court is directed to amend the official caption to conform to the listing of the parties stated above.

MARTIN S. HYMAN, (Jeffrey T. Golenbock, *on the brief*), Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, *for Respondent-Appellee.*

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Petitioner-Appellant ISC Holding AG ("ISC") appeals from a November 23, 2010 order of the United States District Court for the Southern District of New York (Stanton, *J.*) vacating its voluntary notice of dismissal and from a judgment, entered on January 20, 2011, dismissing with prejudice its petition to compel arbitration. The matter presents two issues. First, ISC contends that the district court abused its discretion in denying its motion for recusal. Second, ISC argues that the court erred in vacating its notice of voluntary dismissal, filed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

ISC based its recusal motion on the district court's receipt of supposedly prejudicial information from a putatively "extrajudicial" source. Said source was ISC's own lawyer, who spoke briefly with the district judge, *in camera* and *ex parte*, after moving to withdraw prior to a scheduled evidentiary hearing and after indicating that he believed his withdrawal was mandatory, but that he was not comfortable discussing the details in the presence of counsel for Respondent-Appellee Nobel Biocare Finance AG ("Nobel").[1] Even assuming that the

---

[1] At the time of the district court proceedings, Respondent was a subsidiary of Nobel Biocare Finance AG, known as Nobel Biocare Investments NV. The two companies have since merged; this change in corporate structure is not material here.

information conveyed by ISC's counsel was extrajudicial – at best a dubious proposition – we conclude that the district court's denial of the motion to recuse was not an abuse of discretion.

The vacatur issue is less straightforward. The district court vacated the notice of voluntary dismissal, filed by new counsel one business day before the evidentiary hearing was to commence, on the authority of *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953). In resolving the issue, we reach the same result as the district court, but by a different route. As previously noted, ISC purported voluntarily to dismiss its petition to compel arbitration (filed pursuant to 9 U.S.C. § 4) on the authority of Fed. R. Civ. P. 41(a)(1)(A)(i). We conclude, however, based on the interaction of Rule 41(a)(1)(A)(i) and Fed. R. Civ. P. 81(a)(6) with 9 U.S.C. §§ 4 and 6, that ISC's purported voluntary dismissal was improper because Rule 41(a)(1)(A)(i) does not apply in the context of petitions to compel arbitration. We thus agree with the district court that vacatur was appropriate and therefore AFFIRM its judgment, without reaching the question whether *Harvey Aluminum* remains good law.

## BACKGROUND

This appeal is the second time that the present matter has come before this Court. We begin with the background to the first appeal, relevant here.

3

This case centers on a document, stating itself to be an "Asset Management Facilitation Agreement" ("Agreement"), that was signed, purportedly in January 2008, by a representative of ISC and by one Martin Gerber, the corporate treasurer of what was then Nobel's parent company. (As noted, the subsidiary and its parent have since merged.) According to the Agreement, ISC was to act as Nobel's asset and investment manager regarding $200 million of specified assets, with concomitant control over those assets; the Agreement also provided for arbitration of disputes arising thereunder.

On December 19, 2008, ISC, claiming Nobel to be in breach of its obligations under the Agreement and urging that "[t]ime was of the essence," filed a petition to compel arbitration in the United States District Court for the Southern District of New York pursuant to 9 U.S.C. §§ 4 and 206. Nobel duly opposed the petition, contending, *inter alia*, that the district court lacked personal jurisdiction over Nobel, and that the Agreement itself had been fraudulently entered into by ISC, a three-person Swiss firm with no track record in asset management, and Gerber, who, without actual authority to bind Nobel, had signed the Agreement in exchange for a six-figure kickback from ISC.[2] The

_____

[2] Nobel, then a wholly-owned Netherlands Antilles subsidiary of Nobel Biocare Holding AG, a publicly traded Swiss corporation, stated in a sworn declaration accompanying its motion to dismiss that it had never conducted any business in the United States, nor held any assets or real property in the United States. Prior to ISC's commencement of these proceedings, Nobel had filed a criminal complaint and a civil

4

briefs from both sides, and the numerous and extensive accompanying exhibits, totaled more than 800 pages.

In April 2009, shortly after the conclusion of briefing, the district court denied the petition to compel. Mem. Op., *ISC Holding AG v. Nobel Biocare Inv. N.V.*, No. 08-11051 (S.D.N.Y. April 3, 2009), ECF No. 29. The district court noted that the American Arbitration Association ("AAA") had refused to arbitrate the dispute, because the International Chamber of Commerce rules specified in the Agreement's arbitration clause were incompatible with AAA arbitration.[3] The court then held that the Agreement's stated alternative to AAA arbitration, submission of the dispute "to any other U.S. court," clearly referred to resolution of disputes only in a judicial, rather than arbitral forum. Since an "agreement to submit the disputes to a court is not an agreement to arbitrate them," *id.* at *1, the court held that there was no enforceable agreement to arbitrate, and it denied the petition to compel on the merits.[4] ISC timely filed a notice of appeal.

action against ISC in Switzerland.

[3] The Agreement's arbitration clause, in relevant part, states:

> In the event of disputes concerning any aspect of the AMF Agreement, . . . . [i]f [communication between the parties] fails to resolve the dispute then the parties agree in advance to have the dispute submitted to binding arbitration through The American Arbitration Association or to any other US court. . . . The arbitration shall be conducted based upon the Rules and Regulations of the International Chamber of Commerce (ICC 500).

[4] The court did not reach the issue of personal jurisdiction, or determine whether the Agreement as a whole was validly entered into and enforceable.

5

The parties thereafter submitted some 850 pages of briefing and appendix material to this Court. In November 2009, following oral argument in the matter, a panel of the Court vacated the district court's judgment by summary order. *ISC Holding AG v. Nobel Biocare Inv. N.V.*, 351 F. App'x 480 (2d Cir. 2009). We held that, considering the Agreement as a whole, the arbitration clause's reference to "any other U.S. court" was ambiguous, and could fairly be read as referring either to a judicial or to an arbitral forum. *Id.* at 482-483. Since the arbitration clause was, contrary to the view of the district court, potentially an enforceable agreement to arbitrate, we remanded for further proceedings.

Following remand, the parties met with the district court in December 2009 and concurred that an evidentiary hearing would be required to resolve facts concerning the meaning of the purported arbitration clause, Gerber's authority to sign the Agreement, and personal jurisdiction over Nobel. The parties agreed on a provisional discovery schedule and thereafter commenced discovery here. Document discovery was begun and completed by February 2010; by March 2010 the parties had agreed that depositions of all party witnesses who might testify at the evidentiary hearing (essentially a bench trial) on arbitrability would occur in London, England in the space of a week in mid-May 2010.

Testimonial discovery, however, did not run entirely to schedule. On May 4, 2010, only shortly before the scheduled depositions, ISC notified Nobel that a sudden and unavoidable obligation had arisen that would prevent ISC's principal, Asher Tchividjian, from being deposed in May.[5] ISC requested that *all* depositions be postponed until some time in June. Following an exchange of letters from the parties to the district court, the court directed that Tchividjian's deposition alone be postponed, with the other depositions to go forward as scheduled; the parties eventually agreed that Tchividjian's deposition would occur in New York on June 23.

On June 21, ISC e-mailed Nobel to notify it that Tchividjian would not be appearing for his scheduled deposition for a second time because his passport had allegedly been torn coming through customs in Dubai, thus preventing him from traveling to the United States until a replacement passport could be obtained. This e-mail provoked an exchange of heated letters to the court, in which Nobel cast doubt on the veracity of Tchividjian's statements and argued that ISC should be sanctioned.

The district court ordered the Tchividjian deposition rescheduled for mid-July 2010; the court simultaneously directed ISC to produce all documents

___

[5] ISC said that the obligation in question was week-long attendance at a World Health Organization ("WHO") conference in Madrid related to Tchividjian's financing of WHO projects in West Africa.

related to the passport incident, including proof that Tchividjian had made plans to travel to New York for his deposition prior to the alleged tearing of his passport. On July 7, counsel for ISC provided Nobel with documents that purported to be from the travel service Expedia, namely: (1) a purported e-mail from Expedia confirming that Tchividjian had booked a flight to New York; and (2) a purported acknowledgement by Expedia of Tchividjian's request for a refund of his airfare in light of the supposed passport mishap. At Tchividjian's deposition, which finally occurred on July 13 and 14, Nobel questioned Tchividjian regarding his explanations for both postponements of his deposition and sought details regarding the alleged passport incident.

Nobel, unsatisfied with Tchividjian's account, wrote the district court on July 30, describing inconsistencies in Tchividjian's statements and implying that Tchividjian had simply fabricated his need to be in Madrid for a week and the later damage to his passport.[6] The letter made clear that Nobel planned to file

---

[6] Nobel noted, among other alleged inconsistencies, that ISC had informed the district court two days before Tchividjian's scheduled June 23 deposition that his passport was torn on June 18 and that he had immediately applied for a new one, but was unlikely to receive it in time to appear. Two days later, ISC stated in a letter to the court that the damage occurred "at the hands of an immigration officer" upon Tchividjian's arrival in Dubai. According to Nobel, however, at his deposition Tchividjian testified that as a Dubai resident, he does not need his passport to enter, that his passport was torn in "East Africa" on June 5 or 6, that he applied for a new passport then, and that when he was leaving Bahrain on Thursday, June 17, it was further damaged. Nobel further alleged that Tchividjian declined to identify where in East Africa the incident took place.

8

a motion for discovery sanctions to recover the additional costs incurred as a result of the deposition postponements. Nobel further requested that the district court set a date for the evidentiary hearing in October 2010.

By early August, Nobel had also come to the conclusion that the purported Expedia documents were probable forgeries, and it wrote to ISC on August 9 to demand electronic copies of those documents in native format. The parties conferred with the district court on this issue on August 10. Following the August 10 conference, in response to Nobel's allegations that Tchividjian and ISC had made false statements to the court and had fabricated the Expedia documents, the district court ordered Tchividjian to submit a declaration regarding his travel arrangements in response to questions to be provided by Nobel, to be submitted within two weeks of receipt of Nobel's questions. The court also ordered that ISC submit a draft pretrial order, with findings of fact and conclusions of law, to Nobel by September 30, and that the parties submit a joint pretrial order to the court by October 20, preparatory to the evidentiary hearing, which was to begin on October 25.

Nobel e-mailed its questions to Tchividjian on August 13, but ISC failed to submit a responsive declaration from Tchividjian prior to the two-week deadline set by the court. On September 14, no declaration having yet been submitted, Ira Matetsky, counsel for ISC, wrote the court to request a pre-

9

motion conference regarding a planned motion by his law firm seeking withdrawal from representation of ISC. Both parties appeared at that conference, held on September 21, 2010.[7]

Counsel for Nobel averred below—and ISC has not disputed the accuracy of this account—that at this conference, Matetsky, with counsel for Nobel present, told Judge Stanton that, during his preparation of the Tchividjian declaration, an event had occurred, related to the August 10 conference and one of the issues that Nobel had raised with the court there, that Matetsky saw as obligating him to withdraw from the case.[8] Judge Stanton then spoke briefly with Matetsky, out of the presence of counsel for Nobel, regarding the request to withdraw.[9]

Following this conversation, with counsel for Nobel present, Judge Stanton indicated that he had decided to grant the motion to withdraw, assuming certain conditions could be met. On September 23, Judge Stanton issued an order that granted the motion to withdraw upon ISC's submission of a draft pretrial order

---

[7] The parties declined a court reporter; Judge Stanton's law clerk took detailed notes of the meeting.

[8] It was at the August 10 conference that Nobel asserted that Tchividjian and ISC had made false statements to the court and submitted fabricated evidence.

[9] Counsel for Nobel's estimate, which ISC has not contested, is that the discussion lasted roughly 10 minutes. The parties do not dispute that it occurred at the request of ISC's counsel, who expressed reluctance at discussing the matter in the presence of Nobel's attorney.

10

by September 30; the order required that successor counsel for ISC enter a notice of appearance by October 15, with trial still scheduled to begin on October 25. On September 24, Nobel issued a subpoena to Expedia for documents and deposition testimony, with the documents to be produced by October 18, and the deposition scheduled to occur on October 20.[10]

On October 14, new counsel for ISC entered an appearance, and requested a pretrial conference to discuss trial preparation and scheduling. Successor counsel stated that at said conference, counsel would request that the scheduling order be modified and the trial postponed, so that ISC could request documents and take the deposition of Gerber (which ISC had never previously sought) in Switzerland.

Pursuant to ISC's request, the district court conferred with the parties on October 20. At that conference, in the course of discussing the need to subpoena Expedia, counsel for Nobel reminded Judge Stanton that he had spoken privately with Matetsky regarding the latter's reasons for seeking to withdraw, and Nobel's counsel briefly discussed that prior conversation with the judge.[11] The court and counsel for both parties then discussed arrangements for the

___

[10] Expedia later requested, and Nobel agreed, that the deadline for document production, and the deposition, be postponed until Friday, October 22.

[11] After being reminded of the conversation, Judge Stanton said, "[Y]ou can accept my assurance that I haven't one iota of recollection about what I was told during that conference . . . ."

11

Expedia subpoena and deposition, and agreed that the deposition would go forward on October 22. Counsel for ISC then raised again the issue of pushing back the October 25 trial date to allow time to obtain documents and deposition testimony from Gerber; the court, without ruling out the possibility of a later adjournment for that purpose, concluded that it would not be fair to postpone the beginning of the bench proceeding. Both sets of lawyers then conferred regarding logistics outside the presence of the court, and told the court that they had agreed that the hearing should begin as scheduled, subject to any last-minute client scheduling conflicts.

At the close of the pretrial conference, counsel for ISC stated that they had been unaware that Matetsky had spoken to Judge Stanton regarding his reasons for withdrawal, and requested that the portion of the record dealing with that conversation be unsealed and provided to them; on hearing that the conversation had occurred without a court reporter present, counsel said that they would confer with Matetsky regarding the conversation directly.[12]

Thus, as of this conference on Wednesday, October 20, Nobel was to depose Expedia on Friday, October 22, and hearing was scheduled for Monday, October 25, 2010, over 22 months after ISC first filed the petition to compel arbitration.

---

[12] The notes taken by Judge Stanton's law clerk during the conference with Matetsky were subsequently provided to ISC's new counsel. The notes are in the record, under seal.

On October 22, however, one business day before the scheduled hearing, ISC filed a notice of voluntary dismissal without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). ISC also wrote a letter to Judge Stanton, stating that it believed that the judge needed to recuse himself from any further proceedings regarding the case because of his conversation with Matetsky.

Notwithstanding this notice of dismissal, Nobel went forward that day with the scheduled Expedia deposition. The Expedia employee whom Nobel deposed testified that, based on the documents provided to her (and provided by ISC to the court) she had found no records within Expedia's system that would support or corroborate Tchividjian's account of his travel arrangements; that she had been unable to locate the e-mails (purportedly from Expedia to ISC) provided by ISC to the district court; and that her search was sufficiently thorough that she would have been able to locate said e-mails had they in fact been sent by Expedia.

At the request of Nobel, the parties met with the district judge that same afternoon to discuss the notice of dismissal and the suggestion of recusal. At the conference, Judge Stanton, discussing the issue of recusal, stated first that the

> reason I had forgotten [the information conveyed by Matetsky] . . . [is] because so much of what was told me during that conference was simply a rehash of what I had already heard in conferences between the two sides. And I wasn't interested in that. What I was interested in was is there enough here to justify withdrawal. So I was only listening really for that . . . .

13

After further discussion of the notice of dismissal and the issue of recusal, the parties set a schedule for further motions on those issues, and the conference ended there.  Considerable procedural ructions then ensued.

On October 28, ISC formally noticed its motion for Judge Stanton to recuse himself.  Nobel in turn, that same day, filed a motion requesting that the district court deem the notice of dismissal to be of no effect and that the court set a new trial date on the petition to compel arbitration.

Following briefing on both motions, the court denied ISC's motion for recusal on November 22, *ISC Holding AG v. Nobel Biocare Inv., N.V.*, 759 F. Supp. 2d 289 (S.D.N.Y. 2010);[13] the court granted Nobel's motion and vacated ISC's notice of dismissal on November 23, *ISC Holding AG v. Nobel Biocare Inv. N.V.*, 759 F. Supp. 2d 294 (S.D.N.Y. 2010).[14]  On November 30, ISC filed a notice of appeal of the vacatur.[15]  Following a status conference on December 16, the

---

[13] The published version of that opinion redacts the details of the *ex parte* conversation between Matetsky and the district court.  *See ISC Holding AG*, 759 F. Supp. 2d at 290 n.2.  An unredacted version of the decision was filed with this Court under seal.

[14] The memorandum and order denying the recusal motion, dated November 22, was not entered on the docket until December 1; the opinion and order vacating the notice of dismissal, dated November 23, was entered on the docket on November 30.

[15] An order vacating a notice of dismissal filed under Fed. R. Civ. P. 41(a)(1)(A)(i) is immediately appealable. *Thorp v. Scarne*, 599 F.2d 1169, 1171-72 & n.2 (2d Cir. 1979).

district court rescheduled the trial to begin on January 18, 2011, over ISC's objections. ISC then mounted a series of unsuccessful attempts, both in the district court and this Court, to have the trial stayed. On January 18, when the trial began as scheduled, ISC declined to put on any witnesses or otherwise introduce evidence; the district court therefore dismissed the petition to compel arbitration with prejudice, pursuant to Fed. R. Civ. P. 41(b).[16] Following the entry of judgment, ISC timely appealed the dismissal with prejudice; that appeal, consolidated with ISC's appeal of the vacatur, is before us now.

## DISCUSSION

### I. Recusal

We begin with Judge Stanton's denial of ISC's motion for his recusal, which we review for abuse of discretion. *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008). Recusal here is governed by 28 U.S.C. § 455(a), which states that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[17] This

---

[16] A Rule 41(b) dismissal is proper, *inter alia*, when a plaintiff "fails to prosecute or to comply with . . . a court order." The district court deferred the issue of sanctions, pending this Court's resolution of any appeals in the matter.

[17] Before the district court, ISC also moved for disqualification under 28 U.S.C. § 455(b)(1) (requiring recusal where a judge "has a personal bias or prejudice

15

provision is to "be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *United States v. Liteky*, 510 U.S. 540, 548 (1994). The question, as we have put it, is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *Carlton*, 534 F.3d at 100 (alteration in original) (internal quotation omitted). "[I]t is a rare case," as this Court has said, "when a district judge's denial of a motion to recuse is disturbed by an appellate court . . . ." *In re IBM*, 45 F.3d 641, 642 (2d Cir. 1995).

In applying § 455(a)'s standard, the Supreme Court has noted that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. However, where these opinions are not "properly and necessarily acquired in the course of the proceedings," *id.* at 551, but rather "derive[] from a source outside judicial proceedings," *id.* at 554, this requirement of deep-seated antagonism does not apply.

concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"), but it has not made any arguments under that section on appeal. Those arguments are therefore waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

Here, ISC does not contend that Judge Stanton has shown a deep-seated favoritism toward Nobel or antagonism toward ISC. Rather, ISC argues that in his 10-minute conversation with Matetsky, Judge Stanton became privy to prejudicial information that would substantially bias him against ISC; this information, ISC says, was privileged and conveyed without ISC's consent in an unrecorded *ex parte* conversation to the trier of fact, and therefore constituted an "extrajudicial source of bias" in the *Liteky* framework.

We are doubtful. Any information the district court acquired was obtained in the normal course of adjudicating a withdrawal motion by counsel of record and, it seems to us, could not qualify as "extrajudicial." But even assuming *arguendo* that Matetsky *could* count as an extrajudicial source, *Liteky* teaches that the fact that a judge's opinion derives from a source outside judicial proceedings is not, by itself, a sufficient basis for a bias or prejudice recusal: "The fact that an opinion held by a judge derives from a source outside judicial proceedings . . . is [not] a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice." *Id.* at 554. In the circumstances here, we easily conclude that ISC has failed to show that the extrajudicial acquisition of information in this case requires recusal.

17

First, the knowledge at issue, as Judge Stanton recognized, went not to the heart of whether the Agreement's arbitration clause should be enforced, but only "to a question of credibility about a collateral scheduling dispute." *ISC Holding*,759 F. Supp. 2d at 291. The *in camera* conversation principally addressed Matetsky's conjectures and concerns regarding ISC's account of Tchividjian's travel arrangements.

Next, this subject was hardly new to the district judge. Indeed, Nobel had been hotly questioning Tchividjian's credibility regarding his travel plans and the delays in scheduling his deposition for months prior to Matetsky's conversation with Judge Stanton. The district judge had taken Nobel's allegations sufficiently seriously to require Tchividjian to turn over documentary evidence supporting his explanation of the need to delay his deposition, and later to require Tchividjian to submit a sworn declaration on the same topic.

Admittedly, as ISC contends, concerns about Tchividjian's credibility prior to Judge Stanton's meeting with Matetsky had emanated from ISC's adversary, rather than its own counsel. But the fact remains that any information that Matetsky conveyed was largely cumulative of information brought forward by Nobel in much more emphatic terms. As the district court observed, "[M]uch of what was told me during that conference was simply a rehash of what I had already heard in conferences between the two sides. And I wasn't interested in that. What I was interested in was is there enough here to justify withdrawal."

18

Finally, there is no indication here that the district judge came to have an opinion— favorable or unfavorable—regarding ISC or the merits of its petition as a result of the Matetsky conference. Nor has ISC demonstrated that the conference was of a sort to make this likely. As the district court noted in denying the motion to recuse, no "'opinion' could be formed on the basis of the *in camera* communication." 759 F.Supp.2d at 291. Matetsky's concern about his position, according to the district court, was itself "speculative, recognizing that the problem [he was experiencing with his client] might reflect only a lack of needed cooperation." *Id.* Indeed, the information disclosed was sufficiently unmemorable that the judge had completely forgotten it within a month.

This is not the rare case in which an appellate court revisits the denial of a motion to recuse. ISC cannot credibly argue that an objective and informed observer considering the circumstances here would entertain significant doubt as to whether justice would be done in this case based on its own lawyer's *in camera* conference with the district court. We conclude that the district court did not abuse its discretion in denying ISC's recusal motion.

## II. Vacatur

ISC next contends that the district court erred in vacating its Fed. R. Civ. P. 41(a)(1)(A)(i) notice of dismissal.[18] The district court vacated the notice of

---

[18] Rule 41(a) provides as follows:

19

dismissal pursuant to Nobel's motion to set a new trial date, which it construed as in substance making out a request for relief from judgment under Fed. R. Civ. P. 60(b)(6). We review district court rulings on Rule 60(b) motions for abuse of discretion. *Encoder Commc'ns, Inc. v. Telegen, Inc.*, 654 F.2d 198, 203 (2d Cir. 1981). Whether voluntary dismissal was available to ISC pursuant to Rule 41(a)(1)(A)(i) is a legal question which we review *de novo*. *See Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008).

Here, if on *de novo* review we are satisfied that the district court acted correctly in vacating the notice of dismissal, the court's Rule 60(b)(6) ruling

---

**Rule 41. Dismissal of Actions**
(a) Voluntary Dismissal.
    (1) By the Plaintiff.
        (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
            (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
            (ii) a stipulation of dismissal signed by all parties who have appeared.
        (B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
    (2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

would not be an abuse of discretion. Granted, Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant. *In re Emergency Beacon Corp.*, 666 F.2d 754, 758-59 (2d Cir. 1981).[19] ISC does not seriously contend, however, either that any of Rules 60(b)(1)-(5) applies here or that circumstances justifying vacatur of a notice of dismissal on the ground of Rule 41(a)(1)(A)(i)'s inapplicability would not qualify as "extraordinary" for purposes of Rule 60(b)(6). We turn, then, to the applicability and interpretation of Rule 41(a)(1)(A)(i).

*   *   *

Nobel contends that the district court acted properly because Rule 41(a)(1), it says, does not apply to petitions to compel arbitration, and ISC's Rule 41(a)(1) notice was therefore of no legal effect. ISC argues, to the contrary, that its notice of voluntary dismissal was properly filed, and that the district court therefore erred in vacating it. Suffice it to say that the question is not without difficulty.

---

[19] We do not understand this Court's decision in *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986), to have instituted a more demanding requirement for Rule 60(b)(6) relief. While *Nemaizer* states that Rule 60(b)(6) is properly invoked only when extraordinary circumstances *and* extreme hardship are present, 793 F.2d at 63, that case was decided only five years after *Emergency Beacon*, cites *Emergency Beacon* as supplying the relevant requirements for Rule 60(b)(6), and gives no indication that it intended to modify that decision's interpretation of the rule. In any case, this statement in *Nemaizer* was dicta: the movant there, as described, could not have established *either* "extraordinary circumstances" or "extreme hardship." *See Nemaizer*, 793 F.2d at 63-64.

21

As relevant here, Rule 41(a)(1)(A)(i) states that "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." In arbitration proceedings under the Federal Arbitration Act ("FAA"), including petitions to compel arbitration pursuant to 9 U.S.C. § 4, Fed. R. Civ. P. 81(a)(6) states that the Federal Rules of Civil Procedure govern, "except as [9 U.S.C.] provide[s] other procedures."[20] Title 9 does not "provide other procedures" expressly to govern the voluntary dismissal of petitions to compel arbitration in particular. But 9 U.S.C. § 6 does instruct more generally that "[a]ny application to the court hereunder [including petitions to compel under § 4] shall be made and heard in the manner provided by law for the making and hearing of motions."

1. "Actions" vs. "Motions"

Nobel contends, at the start, that since ISC's petition to compel arbitration is to be treated as a motion, and Rule 41(a)(1) provides a procedure only for the dismissal of "an action," a Rule 41(a)(1) voluntary dismissal was not available to ISC. This argument is unpersuasive.

---

[20] The predecessor to this provision, former Fed. R. Civ. P. 81(a)(3), stated that in proceedings under Title 9, the civil rules "apply only to the extent that matters of procedure are not provided for in th[at] statute[]." Rule 81(a)(3) was replaced as relevant here by current Rule 81(a)(6) in 2007, as part of the general restyling of the civil rules contained in the 2007 amendments to those rules. The advisory committee note accompanying the 2007 amendments to Rule 81 expressly notes that these restyling "changes are intended to be stylistic only."

At minimum, it is inconsistent with Nobel's own conduct in this litigation. Nobel obtained the dismissal with prejudice of ISC's petition pursuant to Rule 41(b). The text of Rule 41(b), however, also refers only to the dismissal of an "action," rather than a motion.[21] Similarly, to demonstrate ISC's putative discovery misconduct, Nobel obtained third-party deposition testimony via a subpoena pursuant to Fed. R. Civ. P. 45; Nobel has also intimated that it intends to move for discovery sanctions, presumably under Fed. R. Civ. P. 37. Both these rules presume that subpoenas and sanctions are being sought in a pending "action," rather than in another type of proceeding.[22]

Nobel's proffered approach is also inconsistent with prior decisions of this Court. In *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A.*, 243 F.2d 342 (2d Cir. 1957), considering a petition to compel arbitration, we declined to read a state-law distinction between "actions" and "special proceedings" (such as petitions to compel arbitration) into the requirements of Fed. R. Civ. P. 4(d)

---

[21] Rule 41(b) also allows a defendant to move to dismiss "any claim against [defendant]." For Rule 41(b) purposes, however, claim generally refers to a component part of a suit against a defendant, as distinct from the entire proceeding with respect to that defendant. *See* 8 J. Moore et al., *Moore's Federal Practice* § 41.21[1], pp. 41-29–41-31 (3d ed. 2008). Here, Nobel obtained a dismissal of the entire proceeding.

[22] *See* Fed. R. Civ. P. 37(a)(2) ("A motion for an order [compelling discovery] to a party must be made in the court where the action is pending."); 37(b)(5) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order . . . be taken as established for purposes of the action . . . ."); 45(a)(1)(A)(ii) ("Every subpoena must state the title of the action, the court in which it is pending, and its civil-action number. . . .").

for effecting service. *Id.* at 347 (citing *Stathatos v. Arnold Bernstein S.S. Corp.*, 202 F.2d 525, 527 n.1 (2d Cir. 1953)).[23] In so declining, we observed that recognizing such a distinction "would unreasonably limit the definition of 'action' in Rule 2, Fed.R.Civ.P., which is broad enough to include an arbitration proceeding." *Id.*[24]

Similarly, in *Government of United Kingdom of Great Britain and Northern Ireland v. Boeing Co.*, 998 F.2d 68, 73-74 (2d Cir. 1993), *overruled on other grounds by Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), this Court stated that "a district judge considering related petitions to compel arbitration can have all of the petitions heard at once pursuant to Rule 42(a) . . . ." But Rule 42(a), which deals with consolidating proceedings, expressly concerns "*actions* . . . involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a) (emphasis added). Granted, in the circumstances of *Boeing*, this Court's

---

[23] In 1957, Rule 4(d)(7) read, "Upon [certain types of defendants], it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Appellant's contention in *Farr*, rejected by this Court, was that (1) the applicable state law distinguished between "actions" and "special proceedings"; and (2) the rule's use of "action" required appellee to have served appellant in the manner prescribed by state law to commence an action, rather than in the manner prescribed by state law to commence a special proceeding such as a petition to compel arbitration. *See* 243 F.2d at 347.

[24] Rule 2 provided then, as now, for "one form of action," the "civil action."

statement was dicta.[25] But it is relevant and informative here nonetheless. *See also Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102-103 (2d Cir. 2006) (describing a petition to vacate an arbitration award, brought under 9 U.S.C. §§ 10 and 203, as an "action").[26]

In sum, we are unpersuaded by Nobel's argument that Rule 41(a)(1) is inapplicable to petitions to compel arbitration for the reason that Rule 41(a)(1) deals with actions, and not motions. Indeed, even brief consideration of the implications of any holding to such effect for other contexts in which the civil rules are commonly employed in the adjudication of petitions to compel counsels strongly *against* Nobel's position. At the same time, however, we conclude that there are compelling *other* reasons, grounded in the text and operation of subparagraph 41(a)(1)(A)(*i*), for holding that this subsection is inapplicable in the context of petitions to compel. We turn now to consideration of those reasons.

---

[25] The district court in *Boeing* had exceeded its authority by consolidating the arbitrations themselves, rather than merely the petitions to compel. 998 F.2d at 73-74.

[26] The only case that Nobel cites as directly on point is *Alstom Power, Inc. v. S & B Engineers & Constructors, Ltd.*, No. 04-2370, 2007 WL 1284968 (N.D. Tex. Apr. 30, 2007). *Alstom Power* dealt with an attempt to dismiss a petition to confirm an arbitration award under 9 U.S.C. § 9, not a petition to compel arbitration brought under 9 U.S.C. § 4. 2007 WL 1284968 at *1. In any case, the analysis of the action/motion distinction in this unpublished out-of-circuit district court decision is minimal.

2. The Inapplicability of Rule 41(a)(1)(A)(i)

Rule 41(a)(1)(A) is the only form of dismissal requiring no court action to be effective. *See Thorp*, 599 F.2d at 1175 n.8. Plaintiffs invoking Rule 41(a)(1)(A)(i), specifically, have an "unfettered right voluntarily and unilaterally to dismiss an action," but the rule itself, by requiring them to do so before the opposing party has served an answer or a motion for summary judgment, confines this right to "an early stage of the proceedings" and thus ensures against the sharp practice that could otherwise ensue. *Id.* at 1175. Thus the rule, by its terms, presupposes that a given litigation proceeds in two stages—one before the service of an answer or motion for summary judgment, one after—and thus also presupposes that the opposing party can file both such papers in the first place.

Here, Nobel served neither an answer nor a motion for summary judgment before ISC filed its notice of voluntary dismissal almost two years into hotly contested proceedings. But, importantly, Nobel unquestionably *could not have filed an answer* in this case consistent with both 9 U.S.C. § 6 and the Federal Rules of Civil Procedure, and perhaps could not have filed a motion for summary judgment either.

Pursuant to 9 U.S.C. § 6, petitions to compel are "made and heard in the manner provided by law for the making and hearing of motions." And while an

26

expansive interpretation is given to "action" in the civil rules—an interpretation that is broad enough to encompass arbitration proceedings—those rules draw a clear and consistent distinction between *pleadings* and motions. *Compare* Fed. R. Civ. P. 7(a), *with* Fed. R. Civ. P. 7(b)(1)-(2); *see also* Fed. R. Civ. P. 11(a)-(b), 12(b). This distinction simply precludes treating the one as the other.

It was for this reason that this Court held in *Productos Mercantiles e Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41 (2d Cir. 1994), that Rule 12(b)'s pleading requirements did not apply to a petition to modify and then confirm an arbitration award. Rule 7(a) exhaustively enumerates the different "pleadings" available under the civil rules; motions, not appearing in that enumeration, are discussed in Rule 7(b).[27] Because the petition at issue could

---

[27] Rule 7 provides as follows:

**Rule 7. Pleadings Allowed; Form of Motions and Other Papers**
(a) Pleadings. Only these pleadings are allowed:
    (1) a complaint;
    (2) an answer to a complaint;
    (3) an answer to a counterclaim designated as a counterclaim;
    (4) an answer to a crossclaim;
    (5) a third-party complaint;
    (6) an answer to a third-party complaint; and
    (7) if the court orders one, a reply to an answer.
(b) Motions and Other Papers.
    (1) In General. A request for a court order must be made by motion. The motion must:
        (A) be in writing unless made during a hearing or trial;
        (B) state with particularity the grounds for seeking the order; and
        (C) state the relief sought.
    (2) Form. The rules governing captions and other matters of form in pleadings apply to motions and other papers.

only be "made and heard in the manner provided by law for the making and hearing of motions," 9 U.S.C. § 6, Rule 12(b)'s pleading requirements were deemed inapplicable. *Productos Mercantiles*, 23 F.3d at 46; *see also O.R. Sec., Inc. v. Prof'l Planning Assocs. Inc.*, 857 F.2d 742, 745-746, 748 (11th Cir. 1988) (holding that Rule 8's notice pleading requirements do not apply in a proceeding to vacate an arbitration award because relief must be sought in the form of a motion).

A similar analysis holds here. An answer is a responsive pleading, not a motion, Fed. R. Civ. P. 7(a), 12(a), that may in turn only be filed in response to certain enumerated pleadings, and not to motions, Fed. R. Civ. P. 7(a). Since filings in the present proceeding can only be "made and heard in the manner provided by law for the making and hearing of *motions*," 9 U.S.C. § 6 (emphasis added), Nobel could not have filed an answer here, any more than ISC could have filed a complaint.

Although we do not find it necessary to resolve the question, there is also a plausible argument that Nobel could not have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 81(a)(6) says that the civil rules apply, "except as [the Federal Arbitration Act] provide[s] other procedures." Section 4 of the Act, 9 U.S.C. § 4, in turn, sets out a simple, flexible framework

28

for deciding whether a petition to compel arbitration must proceed to trial,[28] consistent with "the simplicity, informality, and expedition of arbitration," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985), but in contrast to the intricate requirements of Rule 56. And for decades this Court's § 4 jurisprudence has stood as a self-contained body of precedents that do not draw on our case law construing Rule 56, *see, e.g., Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-130 (2d Cir. 1997) (collecting cases), even though to be sure the substantive standards of § 4 and Rule 56 are in the end quite similar, *see Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Distajo*, 107 F.3d at 129-130.[29] Regardless, though, even if summary judgment motions are available in this context, that answers are *not* available convinces us that Rule 41(a)(1)(A)(i) does not apply to § 4 petitions to compel.

---

[28] The procedures, in relevant part, are as follows:

> Five days' notice in writing of such application [for an order compelling arbitration] shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

[29] We note that while the dissent cites two decisions in other circuits holding summary judgment to be available in certain arbitration-related contexts, *see post* at 15-16, those cases involved proceedings pursuant to 9 U.S.C. §§ 9 and 10, which do not provide applicable procedures in the same manner as 9 U.S.C. § 4.

As a textual matter, Rule 41(a)(1)(A)(i) cannot and does not apply to such petitions. Rule 41(a)(1)(A)(i), drafted to preserve only a "narrow slice" of the expansive power that plaintiffs had at common law to dismiss unilaterally, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990), allows such dismissals only "before the opposing party serves *either* an answer *or* a motion for summary judgment," Fed. R. Civ. P. 41(a)(1)(A)(i) (emphasis added).[30] This rule, by its terms, thus gives an opposing party not simply the ability to preclude unilateral dismissals, but the flexibility to choose between two means of doing so depending on the circumstances.[31] If Rule 41(a)(1)(A)(i) applies to petitions

[30] A plaintiff or petitioner may, of course, voluntarily dismiss by stipulation or leave of court whether or not an answer or motion for summary judgment has been served. Fed. R. Civ. P. 41(a)(1)(A)(ii), (a)(2).

[31] The dissent asserts that our conclusion that Rule 41(a)(1)(A(i) so provides "amounts to little more than unsupported sophistry." *Post* at 10. We find this argument perplexing. True, the rule does say that the service of "*either* an answer *or* a motion for summary judgment" will preclude a unilateral voluntary dismissal. But that the service of either one of the two papers enumerated in this provision is sufficient to preclude unilateral dismissal does not, in itself, mean that the rule's terms and operation are unaffected if one of the two papers is not even *available* for filing and service.

Nor are we persuaded by the dissent's reliance on the drafting history of Rule 41, *post* at 7–10. That history in no way suggests that Rule 41(a)(1)(A)(i), by its terms, fails to presuppose the availability of both an answer and a motion for summary judgment for its operation. Instead, that history reflects a judgment by the rule's drafters that a defendant, able to cut off a plaintiff's privilege of unilateral dismissal by service of an answer, should *also* be able to do so by service of a motion for summary judgment, since "a defendant . . . is as much prejudiced by a voluntary dismissal after service of a motion for summary judgment as he would be by such a dismissal after answer," *post* at 9 (quoting Advisory Comm. On Rules for Civil Procedure, *Summary for Proceedings of March 25-26 1946*, at 53 (1946)). This history of Rule 41(a)(1)(A)(i)'s

30

to compel, however, that flexibility vanishes because—at best—only one of the means given under the rule is available.

ISC argues that this anomalous and undesirable result is required by the literal terms of Rule 41(a)(1)(A)(i). But this *literal* interpretation, as put forward by ISC, itself presupposes that Rule 41(a)(1)(A)(i) applies to petitions to compel arbitration. Absent this presupposition, it is at least equally plausible that, given the relevant subparagraph's either/or language, the terms of the Rule *literally* cover only proceedings that could have *both* answers and motions for summary judgment. In any event, ISC's proposed "literal" interpretation of the rule is simply not a reasonable interpretation in the context of petitions to compel arbitration. Rule 41(a)(1)(A)(i), the Supreme Court has instructed,"was designed to *limit* a plaintiff's ability to dismiss an action," *Cooter & Gell,* 496 U.S. at 397 (emphasis added), and the rule is drafted accordingly. ISC's interpretation, however, would *expand* the availability of unilateral dismissals in the context of petitions to compel arbitration beyond what would otherwise be permissible. This interpretation would permit a vexatious petitioner in arbitration proceedings greater compass than the civil rules generally for "the annoying of a [respondent] by being summoned into court in successive actions,"

extension to include motions for summary judgment as well as answers certainly does not suggest, much less demonstrate, that the rule should apply when answers, foreign to petitions to compel arbitration, are totally unavailable.

31

*Cooter & Gell*, 496 U.S. at 397 (quoting 2 American Bar Association, *Proceedings of the Institute on Federal Rules* 350 (1938) (remarks of Judge George Donworth, member of the Advisory Committee on Rules of Civil Procedure)), in situations not contemplated by Rule 41's text.[32] Such an interpretation thus would disrupt the balance struck by the rule's terms—a particularly ironic result in the context of petitions to compel arbitration, which the Supreme Court has admonished should receive a "summary and speedy disposition," *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983).

The terms of Rule 81(a)(6) also support our conclusion that Rule 41(a)(1)(A)(i) is inapplicable in § 4 proceedings. To repeat, Rule 81(a)(6) states in relevant part that the civil rules apply except insofar as the Federal Arbitration Act provides other procedures. Thus, at minimum, where the FAA's procedures are in conflict with those of the civil rules, the former controls.

Here, given the interaction of 9 U.S.C. §§ 4 and 6, if a party initiates a Title 9 proceeding via petition to compel arbitration, an opposing party may respond—and thereby potentially put "the making of the agreement for arbitration . . . in issue," 9 U.S.C. § 4—only by motion, and is precluded from

---

[32] That Rule 41(a)(1)(A)'s text also makes the plaintiff's ability to unilaterally dismiss an action "[s]ubject to . . . any applicable federal statute" does not affect our analysis, for the simple reason that this *additional* restriction on unilateral dismissals only comes into play when Rule 41(a)(1)(A)(i) in fact applies, the question at issue here.

filing an answer. But, as just discussed, Rule 41(a)(1)(A)(i) presumes that an opposing party may cut off the right of unilateral dismissal by filing and serving an answer. *Cf. Thorp*, 599 F.2d at 1176 (noting that in the ordinary case Rule 41 does not leave a defendant "defenseless against the whim and caprice of the plaintiff," because "plaintiff's ability to harass defendant by the filing and dismissing of successive actions . . . can be cut off completely by the . . . filing and service *of an answer* or motion for summary judgment") (emphasis added) (internal quotation and alteration omitted). Rule 81(a)(6) is thus implicated here because §§ 4 and 6 of the FAA, providing for the filing and adjudication of petitions to compel, constitute "other procedures" that prevent Rule 41(a)(1)(A)(i) from operating according to its terms.[33]

Nor is this conflict merely an abstract point—on the theory that even if a respondent cannot file an answer as contemplated by Rule 41(a)(1)(A)(i), a motion for summary judgment may be available. Consider cases in which the "making of the agreement for arbitration" is "in issue" such that it is clear at the outset that summary judgment will not (and should not) be granted, because an evidentiary hearing is necessary to resolve disputed facts. If Rule 41(a)(1)(A)(i)

---

[33] We note that the anomaly created by the interaction of Rules 41(a)(1)(A)(i) and 81(a)(6) with 9 U.S.C. §§ 4 and 6 is a matter that the Advisory Committee on Civil Rules and the Standing Committee on Practice and Procedure of the Judicial Conference of the United States may wish to address.

is applicable to 9 U.S.C. § 4, an opposing party in such a case must either allow the petitioner the right of unilateral dismissal at any time, or such a party must file and serve a motion for summary judgment that the party knows to be likely futile, or even frivolous.[34] Imposing such an unpalatable choice on those opposing petitions to compel arbitration would disregard Rule 41(a)(1)(A)(i)'s careful balance between the interests of the parties, and would create opportunities for sharp practice that are inconsistent with the notion that petitions to compel are to be decided with dispatch. *Cf. D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107-109 (2d Cir. 2006) (holding Fed. R. Civ. P. 55, related to default judgments, inapplicable to a proceeding under Title 9 to confirm an arbitration award, noting that Rule 55 "does not operate well in the context of a motion to confirm or vacate an arbitration award," such that granting a default judgment in a "confirmation/vacatur proceeding[]" would be "generally inappropriate").[35]

---

[34] Indeed, in this very case, a merits resolution of the petition to compel might well turn on a fact-finder's choice between the parties' competing factual claims regarding the alleged Asset Management Facilitation Agreement. *See supra* at 4-5. Let us not forget that ISC filed its notice of voluntary dismissal on the literal eve of an evidentiary hearing before the fact-finder. *See supra* at 13.

[35] Contrary to the suggestion of the dissent, we do not think it relevant to the analysis that the FAA is intended to ensure "that private agreements to arbitrate"—like any other contractual provision—"are enforced according to their terms,'" *post* at 20 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). This purpose does not resolve *how* such enforcement is to occur and on what terms, or speak to the presence or absence of a

In light of this conflict between the FAA's requirement that petitions to compel be made and heard "in the manner provided by law for the making and hearing of motions" and Rule 41(a)(1)(A)(i)'s text, which contemplates that a defending party may cut off the complaining party's right of voluntary dismissal by filing an answer, it is irrelevant whether ISC filed its notice of voluntary dismissal in scrupulous compliance with the literal terms of the latter rule. In this particular, and unusual, procedural circumstance, such compliance availed it nothing. We conclude that ISC could not dismiss its petition to compel arbitration pursuant to Rule 41(a)(1)(A)(i), because that provision does not apply to petitions to compel under 9 U.S.C. § 4 in the circumstances here.[36]

conflict between the FAA and certain of the Federal Rules of Civil Procedure.

Nor do we think that a unilateral dismissal under Rule 41(a)(1)(A)(i) serves the purposes of the FAA simply because such a dismissal is automatic. *See post* at 21. True, a unilateral dismissal may expedite the termination of petitions to compel, but, as discussed above, *see supra* at 32, this is not an unalloyed good unless the right of unilateral dismissal is properly limited. Rule 41(a)(1)(A)(i) strikes a careful balance between these considerations; yet the operation of 9 U.S.C. §§ 4 and 6, by precluding the availability of an answer to a petition to compel arbitration, undoes that work without furthering the FAA's intended aims. We note, in addition, that contrary to the dissent's implication, nothing in our analysis suggests that Rule 41 *as a whole* is inapplicable in the context of petitions to compel. We address only Rule 41(a)(1)(A)(i) here; voluntary dismissal of a petition to compel is still available upon the stipulation of the parties or by leave of court. *See* Rule 41(a)(A)(ii), (a)(2).

[36] In this case, we need not decide whether Rule 41(a)(1)(A)(i) would allow a plaintiff to voluntarily dismiss if the plaintiff filed an ordinary complaint and the defendant responded with a petition to compel under 9 U.S.C. § 4 instead of an answer or motion to dismiss. We note, however, that because a defendant in that situation at least has the meaningful choice to file the necessary papers to cut off the plaintiff's right to voluntarily dismiss, it would not be in the especially invidious position in which Nobel found itself here.

The district court vacated ISC's notice of dismissal on the authority of *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953). Though we do not reach the issue given our resolution of the case, we note our skepticism that *Harvey Aluminum* is still good law, even confined to the exceedingly narrow compass allowed by our precedent. *Cf. Johnson Chem. Co. v. Home Care Prods., Inc.*, 823 F.2d 28, 30 (2d Cir. 1987), *abrogated on other grounds by Cooter & Gell,* 496 U.S. 384 ("*Harvey* has received a 'cool reception.' . . . [and] stands as the only decision in which we have rejected a strict construction of Rule 41(a)(1)[(A)](i). . . . We repeat our admonition, foreshadowed twenty-nine years ago in *Littman v. Bache & Co.*, 252 F.2d 479, 481 (2d Cir.1958), that Harvey must be limited to its 'extreme' facts.") (quoting *Thorp v. Scarne*, 599 F.2d at 1176).

Our analysis differs from that of the district court. We nonetheless agree with that court's conclusion that ISC's notice of dismissal was properly vacated and therefore with its determination that the petition to compel arbitration should be dismissed with prejudice. We therefore find no abuse of discretion in the district court's Rule 60(b)(6) ruling.

\* \* \*

36

ISC filed its voluntary dismissal here almost two years into litigation, literally on the eve of trial. In the normal course, Rule 41(a)(1)(A)(i) would operate to bar a unilateral dismissal at such an advanced stage of the proceedings. Here, however, because of the anomalous procedural posture of this case, Rule 41(a)(1)(A)(i) did not operate at all, and ISC lacked the right to unilaterally dismiss its petition to compel arbitration. We conclude that the district court did not abuse its discretion when it denied ISC's recusal motion and therefore reached Nobel's motion for relief from the notice of dismissal. Nor, given the unusual circumstances here, did the district court abuse its discretion when it granted Nobel's motion and vacated ISC's notice of voluntary dismissal.

## CONCLUSION

For the foregoing reasons, the judgments of the district court are AFFIRMED.

STRAUB, *Circuit Judge*, concurring in part and dissenting in part:

According to the majority, a petitioner who files an action to compel arbitration under § 4 of the Federal Arbitration Act ("FAA") has no right to unilaterally dismiss that action under Rule 41 of the Federal Rules of Civil Procedure.

But Rule 41 expressly grants a plaintiff the right to unilateral dismissal, so long as he files the necessary notice before his adversary serves *either* an answer *or* a motion for summary judgment. By the plain text of Rule 41, then, a § 4 petitioner could seemingly dismiss his action unilaterally, so long as he files a notice of dismissal prior to his adversary's service of *either* an answer *or* a motion for summary judgment.

To circumvent this textual inconvenience—and as a basis for concluding that Rule 41 cannot apply here—the majority concocts out of pure say-so a new theory: Rule 41 "presupposes" that an adversary may serve *both* an answer *and* a motion for summary judgment, because an adversary must have "the flexibility to choose between two means of" cutting off the right to unilateral dismissal. (Maj. Op. at 26, 31.) The majority musters not a single authority in support of this theory. And in light of Rule 41's clear language, that is no surprise.

In my view, it is beyond dispute that a § 4 petitioner who proceeds in accordance with Rule 41 enjoys the right to unilaterally dismiss his action. The majority may sincerely believe that the Rule, as written, is unfair. But even the sincerest of beliefs do not empower our Court to amend the Federal Rules.

I accordingly dissent.

//

//

//

-1-

# I. Background and the Majority Opinion.

## A. Background.

ISC initiated the instant action by petitioning the District Court under § 4 of the FAA for an order compelling Nobel to arbitrate the parties' underlying dispute.

Nobel responded by waiving its defenses of insufficient process and insufficient service of process under Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure, and by moving to dismiss the action under Rule 12(b)(2) for lack of personal jurisdiction.[1]

Approximately two years later, ISC filed a notice of voluntary dismissal in accordance with Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure ("Rule 41" or "Rule").[2] Pursuant to this notice, ISC purported to unilaterally dismiss the action without prejudice. Nobel, in turn, moved for an order "disregarding" ISC's notice of dismissal.

The District Court granted Nobel's motion, deeming ISC's Rule 41 notice of dismissal to be of no effect. Faced with the prospect of litigating a matter it had initiated but now preferred to dismiss, ISC declined to participate any further in the action.

The District Court then dismissed ISC's petition with prejudice pursuant to Rule 41(b).

## B. The Majority Opinion.

The majority here affirms the District Court's decision to vacate ISC's notice of dismissal. According to the majority, "ISC could not dismiss its petition to compel arbitration

---

[1] By the same motion, Nobel opposed ISC's petition on the merits.

[2] Rule 41(a)(1)(A)(i) permits a plaintiff to dismiss "an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Rule 41(a)(1)(B) provides that, "[u]nless the notice . . . states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."

pursuant to [Rule 41], because that provision does not apply to petitions to compel arbitration under . . . § 4" of the FAA. (Maj. Op. at 36.)

The majority offers twin rationales for this conclusion, each of which is without merit.

### 1. The Majority's Rule 41, "Textual" Rationale.

The majority first claims that the text of Rule 41 itself prevents the Rule from applying in the context of an action brought to compel arbitration.

The majority begins by acknowledging that, under Rule 41, an adversary may cut off a plaintiff's right to unilateral dismissal by serving *either* an answer *or* a motion for summary judgment before the plaintiff files his notice of dismissal. Although the *Rule* does not say so, the *majority* says the Rule cannot apply unless *both* answers *and* motions for summary judgment are available, because an adversary must retain "the flexibility to choose" the manner in which to cut off a plaintiff's right to unilateral dismissal. (Maj. Op. at 31.)

With the deck thus sufficiently stacked, the majority observes that answers are unavailable in the context of actions to compel arbitration, so Rule 41 must be unavailable, too.

### 2. The Majority's Rule 81 Rationale.

The majority arrives at the same conclusion—that Rule 41 cannot apply here—by way of Rule 81 of the Federal Rules of Civil Procedure.

Rule 81 provides that the Federal Rules govern judicial proceedings "relating to arbitration," "except as [the FAA] provide[s] *other procedures*." Fed. R. Civ. P. 81(a)(6), (B) (emphasis added). According to the majority, the FAA provides "other procedures" within the meaning of Rule 81 so as to preempt Rule 41 in the context of judicial proceedings under the FAA.

In brief, the majority notes that, under § 6 of the FAA, applications to compel arbitration are made and heard as *motions*. *See* 9 U.S.C. § 6. The majority thus reads § 6 as precluding the service of an answer, because an answer is not a "motion." Because, the majority says, Rule 41 "presupposes" the availability of both answers and motions for summary judgment, and because the FAA provides "other procedures" that preclude the service of answers, the majority concludes that Rule 41 must be preempted in the context of judicial proceedings relating to arbitration.

## II.     The Text of Rule 41 Does Not Render the Rule Inapplicable in the Context of Judicial Proceedings Relating to Arbitration.

I begin with the majority's claim that Rule 41 cannot apply unless an adversary has the "flexibility to choose" the manner in which to cut off the right to unilateral dismissal. This gloss on Rule 41 is supported by nothing more than the majority's *ipse dixit*.

Constrained, as I am, by the unambiguous text and history of Rule 41, I find the majority's analysis unpersuasive.

### A.     The Text of Rule 41.

Rule 41 is clear on its face. It states that a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves *either an answer or a motion for summary judgment*." Fed. R. Civ. P. 41(a)(1)(A)(i) (emphasis added).

The foregoing text nowhere indicates that the Rule applies *only* when an adversary has the "flexibility to choose" between serving an answer and a motion for summary judgment. Rule 41 may, *de facto*, afford some adversaries "flexibility" in deciding how to cut off the right to unilateral dismissal. But that is a far cry from saying that "flexibility" is, *de jure*, a prerequisite to the applicability of the Rule. If an adversary's "flexibility" of choice were at all relevant, the

-4-

Rules Committees could have made that apparent in any of the seven amendments to Rule 41 that have been implemented over the last 66 years.

$*$ $*$ $*$

In pressing its "textual" argument that Rule 41 cannot apply here, the majority overlooks the Rule's text in another way. Rule 41 grants plaintiffs an absolute and unconditional right to unilateral dismissal,[3] "[s]ubject to . . . any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A). But plaintiffs' "right to dismiss will not be subject to the terms of a statute unless the statute *specifically requires* [that dismissal be by] consent of the court." 8-41 *Moore's Federal Practice—Civil* § 41.32 (emphasis added).[4] The FAA contains no such requirement.

Rule 41's "[s]ubject to" clause certainly could have included the kind of proviso the majority thinks the Rule does include. That is, Rule 41 could have said that plaintiffs' right to unilateral dismissal is "subject to" an adversary's retaining "flexibility to choose" whether to answer or move for summary judgment. But the Rule does not say that. Rather than amending the Rule by judicial fiat, the majority should allow the Rules Committees to do their work.

$*$ $*$ $*$

Finally, I note a central irony in the majority's decision.

The majority emphasizes its "skepticism" that our decision in *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953) "is still good law." (Maj. Op. at 36.)

---

[3]     *See, e.g.*, *In re Bath and Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008); *Am. Soccer Co., Inc. v. Score First Enters.*, 187 F.3d 1108, 1110 (9th Cir. 1999); *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977).

[4]     *Moore's* cites to the False Claims Act, 31 U.S.C. § 3730(b)(1), the Immigration and Nationality Act, 8 U.S.C. § 1329, and the Clayton Act, 15 U.S.C. § 15c(c), each of which explicitly precludes unilateral dismissal. *See* 8-41 *Moore's Federal Practice—Civil* § 41.32.

Indeed, *Harvey* has been rejected, disapproved of, or limited by nearly all the Courts of Appeals that have considered it—including our own.[5]

The basis for this "cool reception" is the *Harvey* Court's rewriting of the unambiguous provisions of Rule 41. *See Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979). We acknowledged in *Harvey* that the terms of Rule 41 foreclose a plaintiff's right to unilateral dismissal only upon the service of an answer or a motion for summary judgment. But we nevertheless recognized—contrary to the plain text of the Rule—a third circumstance in which a plaintiff's right to voluntary dismissal would terminate: where "an advanced stage of a suit has been reached." *Harvey*, 203 F.2d at 108.

The majority casts doubt on the validity of *Harvey*. But in the same breath, the majority rewrites the unambiguous provisions of Rule 41, and thus commits the very error that caused the majority to doubt the validity of *Harvey* in the first place. In *Harvey*, we freely dispensed with a "*literal* application" of Rule 41, because we thought a "*literal* application" would not accord with the Rule's "essential purpose." *Id.* (emphasis added). And in the instant matter, the majority rewrites Rule 41 because it thinks "a '*literal*' interpretation of the rule is simply not a

---

[5] *See, e.g.*, *Johnson Chem. Co., Inc. v. Home Care Prods., Inc.*, 823 F.2d 28, 30 (2d Cir. 1987), *abrogated on other grounds*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *Santiago v. Victim Servs. Agency of Metro. Assistance Corp.*, 753 F.2d 219, 222 (2d Cir. 1985), *abrogated on other grounds by Cooter & Gell*; *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979); *see also, e.g.*, *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d at 167 n.10; *Am. Soccer Co., Inc.*, 187 F.3d at 1111; *Marex Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 2 F.3d 544, 547 (6th Cir. 1993); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 & n.4 (3d Cir. 1987); *Universidad Cent. del Caribe, Inc. v. Liaison Comm. on Med. Educ.*, 760 F.2d 14, 18-19 (1st Cir. 1985); *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795 (7th Cir. 1983); *Carter*, 547 F.2d at 259; *Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters*, 506 F.2d 914, 916 (5th Cir.), *cert. denied*, 422 U.S. 1048 (1975); *D.C. Elecs. v. Nartron Corp.*, 511 F.2d 294 (6th Cir. 1975).

*reasonable* interpretation in the context of petitions to compel arbitration." (Maj. Op. at 32 (emphasis added).)

In short, I disapprove of the majority's decision here for the same reason the majority itself disapproves of *Harvey*.

### B.      The History of Rule 41.

The plain text of Rule 41 nowhere states that the Rule applies *only* if *both* answers *and* motions for summary judgment are available. Nevertheless, the majority proclaims that Rule 41 "presupposes" the availability of "both such papers," (Maj. Op. at 27), because an adversary must enjoy "the flexibility to choose between two means" of cutting off a plaintiff's right to unilateral dismissal, (Maj. Op. at 31).

"Facts are," however, "stubborn things."[6] No less stubborn are the facts pertinent to the development of Rule 41, which the majority either misunderstands or chooses to ignore. Those facts belie the theory the majority propagates here.

\*        \*        \*

At its inception, Rule 41 plainly did not "presuppose" that an adversary would have "the flexibility to choose between two means" of cutting off a plaintiff's right to unilateral dismissal. Indeed, there was no room in the Rule for "flexibility," because as adopted in 1937, Rule 41 provided only *one means* of cutting off a plaintiff's right to unilateral dismissal. Specifically, the Rule stated as follows: "an action may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal *at any time before service of the answer*." Fed. R. Civ. P. 41(a)(1)(i) (1937) (emphasis added).

\*        \*        \*

---

[6]      *See* David McCullough, *John Adams* 68 (2001) (quotations omitted) (quoting Adams).

The 1946 amendment to Rule 41 provided that the service of a motion for summary judgment would, like the service of an answer, terminate a plaintiff's right to unilateral dismissal. See Fed. R. Civ. P. 41(a)(1)(i) (1946) ("[A]n action may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal at any time before service by the adverse party of an answer *or of a motion for summary judgment*, whichever first occurs.") (emphasis added).

The impetus for the 1946 amendment was not, however, the rulemakers' longing to bestow on defendants "flexibility to choose between two means" of cutting off plaintiffs' Rule 41 rights. Rather, as the drafting history of the Rule indicates, the rulemakers recognized that a defendant who had *already moved* for summary judgment would be prejudiced by a plaintiff's subsequent unilateral dismissal, just as would be a defendant whose action was unilaterally dismissed following the service of an answer.

In March 1946, the Advisory Committee on Rules for Civil Procedure convened to discuss possible amendments to the Rules. The Committee Summary on Rule 41 noted that a leading commentator had criticized the 1937 version of the Rule for "authoriz[ing] a plaintiff to dismiss when the defendant had not served an answer *but had moved* for summary judgment," 3 James Wm. Moore, *Moore's Federal Practice* 3037-38 n.12 (1938) (emphasis added). *See* Advisory Comm. on Rules for Civil Procedure, *Summary for Proceedings of March 25-26 1946* ("*Committee Summary*") 53 (1946).

The Committee Summary also noted that a practitioner had voiced similar concerns:

> Mr. Lane Summers, of Seattle, points out that although [Rule 41] restricts the plaintiff's right to dismiss upon notice and without order of court to that preliminary stage of the litigation "before service of the answer," such a dismissal may be effected during that period even though the defendant *has filed* a motion for summary judgment.

*Id.* (emphasis added).

Summers offered several reasons why the service of a motion for summary judgment should, for purposes of Rule 41, have the same effect as the service of an answer. First, he noted that a motion for summary judgment "may be necessitated prior to the defendant's answer." *Id.* Second, he observed that "the motion may require even more research and preparation than an answer." *Id.* Third, he reasoned that "the motion, if well taken, may eliminate the necessity for an answer and result in the final termination of the litigation." *Id.*; *see also* Fed. R. Civ. P. 41 advisory committee's note.

In short, Summers "[felt] that a defendant . . . is as much prejudiced by a voluntary dismissal after service of a motion for summary judgment as he would be by such a dismissal after answer, and that the rule in all fairness should be extended as suggested." *Committee Summary*, at 53; *see also* 2 Advisory Comm. on Rules for Civil Procedure, *Minutes of Proceedings of March 25-28 1946* ("*Committee Minutes*") 367 (1946).

The Committee reacted favorably to Summers's suggestion. *See Committee Minutes*, at 367 ("[Summers] thinks that the plaintiff should not be able to dismiss when the defendant has moved for summary judgment, and I should think there was at least some logic to his suggestion." (comments of Charles E. Clark, *Reporter*)); *id.* at 371 (describing Summers's suggestion as aiming "to prevent [the plaintiff] from dismissing and leaving the defendant with a big job done in preparation for a motion on the merits and not having had a hearing on it" (comments of William D. Mitchell, *Chairman*)). The suggestion was adopted in 1946, and made effective in 1948. *See* Fed. R. Civ. P. 41 advisory committee's note.

\* \* \*

The majority says that Rule 41 "presupposes" the availability of both answers and motions for summary judgment, and that an adversary must have "flexibility to choose between [those] two means" of cutting off the right to unilateral dismissal. In light of the drafting history of Rule 41, the majority's theory amounts to little more than unsupported sophistry.

### III.    The FAA Does Not Preempt Rule 56.

As discussed, the text of Rule 41 is unambiguous. It provides a plaintiff with an absolute right to unilateral dismissal before an adversary serves "*either* an answer *or* a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i) (emphasis added). And as the Rule's drafting history indicates, the current version of the Rule presupposes only that an adversary may serve *at least one* of the papers mentioned in the Rule.

For present purposes, then, the question is whether a respondent in an action brought to compel arbitration may serve any one of those papers. The majority answers that question in the negative, noting (a) that the FAA renders answers unavailable in the context of judicial proceedings relating to arbitration, and (b) that there is a "plausible argument" that the FAA also renders motions for summary judgment unavailable, (Maj. Op. at 29).

I need not dispute whether answers are unavailable in the context of judicial proceedings relating to arbitration, because motions for summary judgment most certainly *are* available in that context.

### A.    Applicable Law.

The Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. Rule 81 provides that the Federal Rules govern judicial proceedings "relating to arbitration," "except as [the FAA] provide[s] *other procedures*." Fed. R. Civ. P. 81(a)(6), (B) (emphasis added).

-10-

Rule 81 thus allows the Federal Rules to fill in "those procedural gaps left open by the FAA." *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 276 (7th Cir. 1995); *see also Gov't of the United Kingdom of Great Britain and N. Ireland v. Boeing Co.*, 998 F.2d 68, 73 (2d Cir. 1993) (stating that Rule 81 allows application of the Federal Rules "to the extent that [the FAA] does not provide appropriate procedural rules"). More specifically, Rule 81 commands that the Federal Rules govern judicial proceedings under the FAA "to the extent [the Rules are] consistent with the language and purpose of the [FAA]." *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990).

∗　　∗　　∗

In accordance with the foregoing, numerous courts have concluded that particular Federal Rules govern judicial proceedings under the FAA.

We have, for example, acknowledged that the discovery procedures of Rule 26 are applicable in the context of judicial proceedings to confirm an arbitral award under § 9 of the FAA. *See Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 & n.15 (2d Cir. 1978) (citing 7 *Moore's Federal Practice* ¶ 81.05(7) at 81-82 (2d ed. 1975); *Int'l Union of Elec., Radio & Mach. Workers v. Westinghouse Elec. Corp.*, 48 F.R.D. 298 (S.D.N.Y. 1969); Fed. R. Civ. P. 81). Rule 26 is similarly applicable in the context of actions seeking to compel arbitration under § 4 of the FAA. *See*, *e.g.*, *Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999); *Champ,* 55 F.3d at 276; 14-81 *Moore's Federal Practice—Civil* § 81.08. The FAA is silent on matters of discovery in the context of judicial proceedings. *See* 9 U.S.C. § 1 *et seq.*; *Westinghouse Elec. Corp.*, 48 F.R.D. at 300. And Rule 26 is not inconsistent with the FAA's language or purpose. *Compare* Fed. R. Civ. P. 26, *with* 9 U.S.C. § 1 *et seq.* As a result, district courts may, consistent with Rule 81, order

-11-

discovery under Rule 26 to provide evidence relevant to the judicial proceeding at issue. *See*, *e.g.*, 14-81 *Moore's Federal Practice—Civil* § 81.08.

Similarly, in *Reed & Martin, Inc. v. Westinghouse Electric Corp.*, we held that Rule 4—which covers service of process—applies in actions brought to confirm arbitral awards under § 9 of the FAA. 439 F.2d 1268, 1277 (2d Cir. 1971). Section 9 states, in pertinent part, that notice of an application to confirm an award "shall be served [on a nonresident adversary] *in like manner as other process of the court*." 9 U.S.C. § 9 (emphasis added). Without explicitly referring to Rule 81, we concluded that this procedure "refers to," and thus incorporates, Rule 4 of the Federal Rules "on the accomplishment of appropriate service." *See Reed & Martin*, 439 F.2d at 1277; *see also Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 126-27 (D.D.C. 2010) (same) (citing cases & Fed. R. Civ. P. 81).

\* \* \*

By contrast, where the FAA leaves open no procedural gap, and where a Federal Rule is inconsistent with the language or purpose of an FAA procedure, the FAA procedure governs in judicial proceedings relating to arbitration. *See*, *e.g.*, Fed. R. Civ. P. 81(a)(6), (B); *Booth*, 902 F.2d at 931.

In *e.spire Communications, Inc. v. CNS Communications*, for example, the Fourth Circuit held that Rule 60(b)(1) of the Federal Rules does not apply in the context of § 10 applications to vacate an arbitral award. 39 F. App'x 905, 912 (4th Cir. 2002) (per curiam). Rule 60(b)(1) says that a court may relieve a party from a final judgment or order on the grounds of "excusable neglect." But § 10 of the FAA provides for other procedures, such that Rule 60(b)(1) is preempted. Specifically, § 10 says that an arbitral award may be vacated *only* under four circumstances: (1) where the award was procured by, *inter alia*, fraud; (2) where there was

-12-

"evident partiality or corruption in the arbitrators"; (3) where the arbitrators were guilty of certain specified misconduct; or (4) where the arbitrators, *inter alia*, exceeded their powers. *See* 9 U.S.C. § 10(a)(1)-(4). The *e.spire Communications* court thus concluded that because the FAA "contains exclusive procedures for vacating arbitration awards, Rule 60(b)(1) is inapplicable." *e.spire Commc'ns*, 39 F. App'x at 912.

Similarly, in *O.R. Securities v. Professional Planning Associates*, the Eleventh Circuit held that Rule 8's notice-pleading regime does not apply in the context of an application to vacate an arbitration award. 857 F.2d 742, 748 (11th Cir. 1988). As the court noted, § 6 of the FAA says that such an application "'shall be made and heard in the manner provided by law for the making and hearing of *motions*.'" *Id.* at 745 (quoting 9 U.S.C. § 6 (emphasis added)). But Rule 8 does not apply to *motions*; it applies to *pleadings*. Accordingly, the court concluded that the FAA preempts Rule 8 in the context of applications to vacate arbitral awards. *See id.* at 748; *see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) (citing *O.R. Secs.*).

### B.    Analysis.

The FAA does not provide for "other procedures" within the meaning of Rule 81 so as to preempt Rule 56 in the context of an action brought to compel arbitration. Indeed, Rule 56 applies in such proceedings because the Rule is incorporated by, and thus is in no way inconsistent with, the FAA.

*    *    *

The majority says that § 4 of the FAA provides "a simple, flexible framework for deciding whether a petition to compel arbitration must proceed to trial," and that Rule 56 is

-13-

therefore inapplicable. (Maj. Op. at 29.) The majority offers not a single citation in support of this conclusion.

More to the point, the majority's conclusion does not follow. To determine whether, under Rule 81, the Federal Rules govern judicial proceedings relating to arbitration, we ask whether the FAA has "left open" any "procedural gap[ ]," *Champ*, 55 F.3d at 276, and whether the particular Federal Rule that would fill that gap is "consistent with the language and purpose of the [FAA]," *Booth*, 902 F.2d at 931. The majority is thus wrong to say that Rule 56 is inapplicable merely because the FAA provides "a simple, flexible framework." A statute's "simple, flexible framework" does not, without more, preempt the Federal Rules. The whole point of Rule 81 is that the Federal Rules govern judicial proceedings unless some *specific* statutory language or purpose requires otherwise. *See* Fed. R. Civ. P. 81(a)(6); *e.spire Commc'ns*, 39 F. App'x at 912 (holding that because the FAA "contains exclusive procedures . . ., Rule 60(b)(1) is inapplicable"); *O.R. Secs.*, 857 F.2d at 748 (the specific requirement in § 6 that applications under the FAA be made as *motions* preempts Rule 8, which applies to *pleadings*).

The majority is unable to identify any specific language in the FAA, or any underlying statutory purpose, that displaces Rule 56. And I am unable to do so, either.

\*     \*     \*

Section 4 of the FAA states that a party aggrieved by an adversary's refusal to arbitrate may petition a district court for an order compelling arbitration. *See* 9 U.S.C. § 4. Section 4 further states that "[t]he court *shall hear the parties*, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall" compel arbitration. 9 U.S.C. § 4 (emphasis added). But in what manner shall the court "hear the parties"? Section 6 of the FAA says that any application to the court—including a § 4 petition to

-14-

compel arbitration—"shall be *made and heard in the manner provided by law for the making and hearing of motions*." 9 U.S.C. § 6 (emphasis added).

By stating that applications "shall be made and heard in the manner provided by law for the making and hearing of motions," § 6 of the FAA "refers to," and incorporates, the Federal Rules relating to motion practice. *See Reed & Martin*, 439 F.2d at 1277 (deeming Rule 4 of the Federal Rules applicable to judicial proceedings under § 9 of the FAA, because § 9 "refers to" Rule 4 by stating that notice shall be served "in like manner as other process of the court"). Indeed, a leading treatise notes that § 6 "plain[ly]" directs courts "to follow the Federal Rules" in deciding motions, whether such motions arise "under the [FAA] sections relating to arbitration agreements or those relating to awards." 1 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich, *Federal Arbitration Law* § 8.7 at 8:19 (1999).

In accordance with the foregoing, at least two of our Sister Courts have explicitly held that Rule 56 applies in the context of judicial proceedings relating to arbitration.

The Tenth Circuit, for example, upheld a district court's use of Rule 56 in a proceeding to vacate an arbitral award under § 10 of the FAA. *Vento v. Quick & Reilly, Inc.*, 128 F. App'x 719, 722 (10th Cir. 2005). The plaintiff in *Vento* had filed a § 10 application; the district court subsequently granted summary judgment in favor of the defendant. *Id.* at 720. On appeal, the plaintiff argued that the district court erred by proceeding under Rule 56. *Id.* at 724. The Tenth Circuit dismissed this argument as "specious." *Id.* As the court noted, the Federal Rules apply in arbitration cases except as the FAA provides other procedures. *See id.* (citing Fed. R. Civ. P. 81). But the FAA provides no "procedures to displace" Rule 56, and the plaintiff offered "no reason why normal procedures should be subverted." *Id.* (quotations omitted). Accordingly, the

-15-

Tenth Circuit held that the district court "properly adhered" to Rule 56 in the plaintiff's action under § 10 of the FAA.  *See id.*

Similarly, the Seventh Circuit upheld a district court's use of Rule 56 in a proceeding to confirm an arbitration award under § 9 of the FAA.  *See Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 390 (7th Cir.) (noting that "[n]othing in § 9 precludes application of [Rule 56]"), *cert. denied*, 454 U.S. 838 (1981); *see also Champ*, 55 F.3d at 276 n.3 (citing *Newspapers, Inc.*).

It is true that only a few of our Sister Courts have had occasion to explicitly reject the "specious" argument that Rule 56 does not apply in the context of judicial proceedings relating to arbitration.  *See Vento*, 128 F. App'x at 724.  Nevertheless, the Federal Reporters are teeming with cases in which respondents have moved for summary judgment in that context.[7]

---

[7]     *See*, *e.g.*, *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 934-35 (5th Cir. 2012) (Volvo filed a § 4 petition to compel arbitration; the parties subsequently filed cross-motions for summary judgment on the arbitration issue); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 306 (3d Cir. 2009) (Nationwide filed a petition to compel arbitration; the district court granted summary judgment in favor of respondent on the ground that Nationwide was collaterally estopped from invoking the arbitration clause there at issue); *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 993 (7th Cir. 2007) (Nissan filed a petition to compel arbitration pursuant to the FAA; the parties later cross-moved for summary judgment on the issue of arbitrability); *Delta Funding Corp. v. Harris*, 466 F.3d 273, 274 (3d Cir. 2006) (Delta filed a petition to compel arbitration; Harris opposed the petition in part by filing a motion for summary judgment); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 514 (6th Cir. 2004) (counterclaimant filed petition to compel arbitration; parties then cross-moved for summary judgment on issue of arbitrability); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1129 (9th Cir. 2000) (Chiron sought an order compelling arbitration; Ortho moved for summary judgment on the ground that a previous arbitral award operated as res judicata); *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518, 1521 (7th Cir. 1993) (petitioner filed action to compel arbitration; both parties moved for summary judgment); *see also Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 227 (3d Cir. 2012) (noting that respondent did not file a motion for summary judgment in response to a motion to compel arbitration); *Am. Gen. Fin. Servs. of Ala., Inc. v. Witherspoon*, 426 F. App'x 781, 782 (11th Cir. 2011) (per curiam) (appellees had filed a petition to compel arbitration, and thereafter filed a motion for summary judgment); *Terwilliger*

### C. The Supposed Insufficiency of Summary Judgment.

The majority thinks that, even if motions for summary judgment are generally available in the context of judicial proceedings relating to arbitration, Rule 41 still cannot apply in that context. The majority bases this sweeping conclusion on the following contrivance.

As discussed, the majority says that answers may not be served in response to petitions to compel arbitration. By the terms of Rule 41, then, a § 4 respondent could cut off a petitioner's right to unilateral dismissal *only* by moving for summary judgment. But, the majority muses, what if "it is clear at the outset that summary judgment will not (and should not) be granted"? (Maj. Op. at 34.) Under such circumstances, the majority says, a respondent would have to choose between "serv[ing] a motion [he] knows to be likely futile, or even frivolous," and "allow[ing] the petitioner the right of unilateral dismissal at any time." (Maj. Op. at 34.)

The majority's scenario is premised on a fundamental misunderstanding of summary judgment procedure. A party moving for summary judgment cannot know "at the outset that summary judgment will not (and should not) be granted," because he cannot know "at the outset" whether his adversary will submit competent evidence sufficient to create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a), (c). Similarly, a movant cannot know "at the outset" whether his adversary will timely respond to the motion, or indeed whether the adversary will respond at all. Finally, a movant cannot know "at the outset" how the district court will ultimately dispose of the motion. Despite our movant's hunch that "summary judgment will not (and should not) be granted," the court may nevertheless be persuaded by the movant's advocacy. And of course, the court may *sua sponte* grant summary judgment on an issue our

---

*v. Terwilliger*, 206 F.3d 240, 243-44 (2d Cir. 2000) (defendants moved to compel arbitration; plaintiff then moved for summary judgment).

supposedly clairvoyant movant failed to anticipate. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114, 119 (2d Cir.1999).

But even if I were to accept the premise of the majority's scenario—and I do not—the majority's hypothetical movant could still find in Rule 56(g) of the Federal Rules a good faith basis to move for summary judgment. Rule 56(g) says that, if the district court "does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Accordingly, a movant who—somehow—knows "at the outset" that summary judgment will not be granted may nevertheless file his motion in an effort to secure factual findings which narrow the scope of discovery and trial.

Of more pressing concern, however, is that the majority crafts an expansive rule—that Rule 41 can never apply in the context of actions to compel arbitration—based on an imagined scenario that has no relevance to the matter before us. Nobel did not submit any affidavit saying it felt obliged not to move for summary judgment in light of its knowledge "that summary judgment [would] not (and should not) be granted." The majority should adjudicate the controversy before it, rather than the one conjured up in an implausible hypothetical.

\*      \*      \*

Finally, the majority appears to think that a § 4 respondent would be prejudiced by Rule 41. This is because a § 4 respondent would be forced to move for summary judgment to cut off a petitioner's right to unilateral dismissal, but in ordinary proceedings, the mere service of an answer would do the trick.

I do not share the majority's concern. Rule 41 "means what it says." *Cf. RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1351 (Fed. Cir. 2007) (quotations omitted); *Thorp*,

-18-

599 F.2d at 1175. What it says is that the right to unilateral dismissal is terminated by the service of either an answer or a motion for summary judgment. What it does not say is that a party's supposed burden in cutting off that right, as compared to the burden of a different party in a different proceeding, is in any way relevant.

The majority may believe such an omission to be unfair. But that belief does not entitle the majority to amend the Rule.

**IV.  *The FAA Does Not Preempt Rule 41.***

As discussed, Rule 41 "presupposes" only that an adversary may serve at least one of the papers mentioned in the Rule—that is, either an answer or a motion for summary judgment. Because the FAA does not preempt Rule 56, a respondent may oppose a petition to compel arbitration by moving for summary judgment.

But the fact that Rule 56 applies in judicial proceedings under the FAA does not alone mean that Rule 41 also applies in such proceedings. That is, we must still determine whether the FAA preempts Rule 41. I conclude that it does not.

*                *                *

In accordance with the Rule 81 inquiry, we first ask whether the FAA "provide[s] other procedures" with respect to the unilateral dismissal of actions brought to compel arbitration. *See* Fed. R. Civ. P. 81(a)(6); *see also Champ*, 55 F.3d at 276; *Boeing Co.*, 998 F.2d at 73. I fully agree with the majority's answer to this question: "[The FAA] does not 'provide other procedures' expressly . . . govern[ing] the voluntary dismissal of petitions to compel arbitration." (Maj. Op. at 22-23.)

Despite this concession, the majority apparently thinks the FAA implicitly preempts Rule 41. The premise for this belief is that Rule 41 "presupposes" the availability of *both* answers *and*

-19-

motions for summary judgment. Because, says the majority, § 6 of the FAA precludes the service of answers in the context of judicial proceedings relating to arbitration, Rule 41 must be preempted in that context.

As discussed at length, the majority's premise is erroneous. Rule 41 merely presupposes the availability of *at least one* of the two papers mentioned in the Rule. Accordingly, the FAA's supposed preclusion of *answers* provides no basis to conclude that the *entirety* of Rule 41 is preempted. Indeed, we have recognized that a statute's preemption of one provision in a Federal Rule does not mean the entirety of the Federal Rule is preempted. *See Productos Mercantiles*, 23 F.3d at 44-46 (holding that Rule 12(b)'s "pleading requirements" do not apply to petitions to modify and confirm an arbitral award, yet affirming the denial of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction).

Nobel itself understands this basic principle. Although the FAA preempts Rule 12(b)'s "pleading requirements," *see id.* at 46, Nobel nevertheless invoked *other* provisions of Rule 12 when it responded to ISC's petition to compel arbitration: it waived its defenses of insufficient process and insufficient service of process under Rules 12(b)(4) and (5), and it moved to dismiss the action under Rule 12(b)(2) for lack of personal jurisdiction.

\* \* \*

In accordance with the second step of the Rule 81 inquiry, we must ask whether Rule 41 is inconsistent with the purpose of the FAA. *See Booth*, 902 F.2d at 931. I find nothing in Rule 41 that is in any way inconsistent with the FAA's purpose. And the majority's silence on this question fails to convince me that I am wrong.

The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford*

*Junior Univ.*, 489 U.S. 468, 479 (1989). But this assumes that an aggrieved party in fact wishes to enforce its agreement to arbitrate. The FAA itself does not force an aggrieved party to continue an action to compel arbitration any more than it forces an aggrieved party to commence such an action in the first place. *Cf. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (noting the "basic precept that arbitration is a matter of consent, not coercion") (quotations omitted).

I also note that Rule 41 is consistent with the purpose of § 6 of the FAA. By providing that a petition for an order compelling arbitration "shall be made and heard in the manner provided by law for the making and hearing of motions," § 6 seeks "to expedite judicial treatment of matters pertaining to arbitration." *See World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365-66 (2d Cir. 1965). Unilateral dismissal under Rule 41 more than "expedite[s]" judicial proceedings under the FAA. Where a petitioner decides that he would prefer to bring an end to his action, dismissal under Rule 41(a)(1)(A)(i) immediately and automatically terminates all proceedings, thus obviating the need for any further "judicial treatment." *See* 8-41 *Moore's Federal Practice—Civil* § 41.33; *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995) ("The dismissal is effective on filing and no court order is required. . . . Filing a notice of voluntary dismissal with the court automatically terminates the action.").

\*　　　\*　　　\*

The FAA, then, does not preempt Rule 41. Because Nobel never served a motion for summary judgment, ISC was well within its rights under Rule 41 to unilaterally dismiss the action. And because ISC's notice of dismissal was thus "filed in conformance with the explicit requirements of [Rule 41]," it was "not subject to vacatur." *See Thorp*, 599 F.2d at 1176.

I acknowledge that ISC's resort to Rule 41 "may be disruptive and annoying." *See*

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Nevertheless,

"it is permitted by the rules."[8] *See id.*

### V. The Impact of the Majority's Decision.

The majority holds that once a party initiates an action to compel arbitration, he may

*never* unilaterally dismiss it.

---

[8]     Nobel does not argue on appeal that its opposition to ISC's petition was the functional equivalent of a motion for summary judgment, such that ISC's right to unilateral dismissal would have been cut off before ISC filed its Rule 41 notice of dismissal. I note that such an argument would not be without surface appeal.

We have, however, repeatedly rejected such "functional equivalence" arguments, emphasizing that Rule 41 is "unambiguous," and that "[o]nly the occurrence of one of the two events specified in the rule"—*i.e.*, the service of an answer or a motion for summary judgment— "can cut off the plaintiff's right unilaterally to dismiss the action." *Santiago*, 753 F.2d at 222 (quotations omitted). As we have explained,

> [Rule 41] dismissals will no longer be self-executing, as intended, if there is to be frequent judicial intervention for the purpose of determining whether the "equivalent" of an answer or a motion for summary judgment has been served . . . to warrant terminating the plaintiff's right to dismiss the proceedings.

*Thorp*, 599 F.2d at 1176.

Accordingly, in *Santiago* we declined to treat an opposition to a motion for a preliminary injunction as the equivalent of an answer or a motion for summary judgment. *See Santiago*, 753 F.2d at 221-22. And in *Thorp*, we rejected an argument that a brief and supporting affidavits, which were submitted in opposition to an application for a temporary restraining order, could be treated as the equivalent of a motion for summary judgment. *See Thorp*, 599 F.2d at 1173. *Cf. Hamilton v. Shearson-Lehman Am. Express, Inc.*, 813 F.2d 1532, 1535 (9th Cir. 1987) ("A motion to compel arbitration . . . is not the equivalent of an answer or a motion for summary judgment.").

In any event, the majority doubts that Rule 56 applies in the context of judicial proceedings under the FAA. As a result, even if Nobel had argued on appeal that its opposition to ISC's petition was the functional equivalent of a motion for summary judgment, I cannot imagine that such an argument would have been well-taken.

-22-

This holding is contrary to the clear language of Rule 41. It rests on unsupported reasoning that ignores our duty to "construe[ ]" the Federal Rules so as "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. It disregards the spirit of the FAA, which aims "to expedite judicial treatment of matters pertaining to arbitration." *See World Brilliance Corp.*, 342 F.2d at 365-66. And at bottom, it makes no sense.

A plaintiff may have various reasons for wishing to unilaterally dismiss his action. He may realize he filed suit in an improper forum. He may wish to marshal new evidence to support a claim. He may be financially unable or unwilling to continue the litigation. Or he may wish to cut his losses after learning that his adversary is judgment-proof. *See generally* 8-41 *Moore's Federal Practice—Civil* § 41.11. A § 4 petitioner may have similar reasons to resort to Rule 41.

The right to unilateral dismissal of course may be exercised regardless of whether the reasons for doing so are adjudged "legitimate." *See Thorp*, 599 F.2d at 1177 n.10. But the mere fact that there *are* "legitimate" reasons for invoking that right counsels against the categorical rule the majority adopts here.

### *VI.* *Conclusion.*

For the reasons stated above, I would hold that the District Court erred by vacating ISC's properly filed notice of dismissal. I thus dissent from Part II of the majority opinion.

Because I conclude that the District Court did not abuse its discretion in denying ISC's recusal motion, I concur with Part I of the majority opinion.